UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

XL SPECIALTY INSURANCE CO.                CIVIL ACTION

                                          NO: 12-2071
VERSUS                                    CONSOL. W/ 12-2098

BOLLINGER SHIPYARDS, INC., ET AL.         SECTION: R(5)

### ORDER AND REASONS

Before the Court is defendant Continental Insurance Company's motion for partial summary judgment on the bad faith claims under Louisiana Revised Statutes §§ 22:1892 and 22:1973 brought against them by Bollinger Shipyards, Inc., Bollinger Shipyards Lockport, L.L.C., and Halter-Bollinger Joint Venture, L.L.C. (collectively "Bollinger") under La. Rev. Stat. Ann. § 22:1892 and La. Rev. Stat. Ann. § 22:1973. For the following reasons, the Court GRANTS defendant's motion and dismisses Bollinger's claims that Continental is liable to pay bad faith penalties under Louisiana Revised Statutes §§ 22:1892 and 22:1973.

**I Background**

In a previous suit, the United States sued Bollinger in connection with the failure of eight Coast Guard vessels that Bollinger converted from 110-foot patrol boats to 123-foot patrol

boats between 2000 and 2006.[1] The United States alleged the following causes of action in that suit: violation of the False Claims Act (FCA), common law fraud, negligent misrepresentation, and unjust enrichment. The claims were based on allegations that Bollinger knowingly manipulated structural calculations regarding the strength of the hulls to induce the Coast Guard to proceed with the program to convert the vessels from 110 feet to 123 feet. The suit sought over $200 million in damages. On January 30, 2013, the Court dismissed the complaint in that suit, and granted the United States leave to amend its False Claims Act and fraud claims. The United States has filed a motion to reconsider the Court's order on the motion to dismiss and Bollinger has filed a motion to dismiss the United States' amended complaint. Both motions are pending before the Court.

The issue in the present case is the extent to which Bollinger's defense and potential liability in the underlying suit are covered under insurance policies issued by the defendant insurance companies. From 2000 to 2008 Bollinger carried primary general liability insurance provided by XL Specialty Insurance Company. From 2000 to 2004 and 2009 to 2010 Bollinger also carried excess general liability coverage provided by Continental. Neither party disputes that there is $26 million in

---

[1] Civil Action No. 12-cv-0920 pending before this court.

underlying primary insurance beneath Continental's excess policies.

In July 2011, Bollinger placed Continental, as well as other insurers, on notice of the government's claims in Civil Action No. 12-cv-0920. Continental issued a reservation of rights letter to Bollinger on August 22, 2011. Continental notified Bollinger's agent that it was premature to ask Continental to provide a defense to Bollinger since the primary limit of $26 million had not been exhausted. Continental said it could not take a coverage position until the position of the primary carrier, XL Specialty, was known.

XL initiated this action on August 13, 2012, seeking a declaration as to whether its policies afforded coverage to Bollinger for the allegations made by the United States. On August 15, 2012, an action that Bollinger had filed against XL and Continental in the 17th Judicial District Court for the Parish of Lafrouche, seeking coverage and bad faith damages, was removed to this Court and consolidated with the suit initiated by XL. Bollinger's petition alleged that Continental was liable to cover certain claims that exceeded the insurance limits of primary carriers and that Continental had refused to accept coverage. Bollinger alleged that it was entitled to the full amount due under the policy, as well as to penalties under Louisiana Revised Statutes §§ 22:1892 and 22:1973 for

Continental's failure to pay Bollinger's claims in a timely manner without good cause. Continental filed an answer denying the allegations made by Bollinger and counterclaimed seeking a declaration as to whether its policies afforded coverage to Bollinger based on the allegations made by the United States. Continental then filed a motion for partial summary judgment on the bad faith claims under Louisiana Revised Statutes §§ 22:1892 and 22:1973.

**II. STANDARD**

A. Summary Judgment Standard

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support

or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting Wright & Miller, Fed. Prac. and Proc. Civ.2d § 2738 (1983)).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *Id.* at 325; *see also Little*, 37 F.3d at 1075 ("Rule 56 'mandates the

5

entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (quoting *Celotex*, 477 U.S. at 332).

B. Penalties for Failing to Pay Insurance Claims

Louisiana law authorizes the recovery of bad faith penalties from insurers who fail to pay legitimate claims under two nearly identical provisions. Under La.Rev.Stat. Ann. § 22:1892(A)(1), "all insurers ... shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured." If an insurer refuses to pay a claim within 30 days of receiving satisfactory proof of loss, and its failure to do so is found to be "arbitrary, capricious, or without probable cause," then section 22:1892(B)(1) provides that the insurer is subject to pay a penalty equal to 50% of the loss, or one thousand dollars, whichever is greater. In addition, section 22:1973 requires insurers to act in good faith and provides for penalties if an insurer fails to pay a claim within sixty days after receipt of satisfactory proof of loss when "such failure is arbitrary, capricious, or without probable cause." § 22:1973(B)(5). Both Section 22:1892 and Section 22:1973 cover an insurer's duty to defend an insured if required under the terms

of a policy. *See Sanders v. Wysocki*, 631 So. 2d 1330, 1335 (La. Ct. App. 1994) *writ denied,* 637 So. 2d 156 (La. 1994) (Section 22:1892); *Credeur v. McCullough*, 702 So. 2d 985, 987 (La. App. 3 Cir. 1997) (Section 22:1973). "A plaintiff may be awarded penalties under only one of the two statutes, whichever is greater." *Dickerson v. Lexington Insurance Co.*, 556 F.3d 290, 297 (5th Cir.2009). Nonetheless, a plaintiff may recover attorneys' fees under section 22:1892 while seeking damages and penalties under section 22:1973. *Id.*

A party seeking relief under either statute has the burden of establishing three things: (1) the insurer received a satisfactory proof of loss; (2) the insurer failed to pay the claim within the applicable statutory period (thirty or sixty days); and (3) the insurer's failure to pay the claim was arbitrary and capricious. *Id.; see also Talbert v. State Farm Fire & Cas. Ins. Co.*, 971 So.2d 1206, 1212 (La. App. 4th Cir. November, 14, 2007). An insurer is charged with receiving a satisfactory proof of loss when the insurer has adequate knowledge of the loss. *Cotton Bros. Banking Co. v. Indus. Risk Insurers*, 941 F.2d 380, 386 (5th Cir. 1991). The phrase "arbitrary and capricious" means a "vexatious refusal to pay," "without reasonable or probable cause or excuse." *Dickerson*, 556 F.3d at 300. An insurer has not acted arbitrarily and capriciously "when it withholds payment based on a genuine (good

7

faith) dispute about the amount of a loss or the applicability of coverage." *Id.* "Whether or not a refusal to pay is arbitrary, capricious, or without probable cause depends on the facts known to the insurer at the time of its action." *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So. 2d 1012, 1021 (La. October 21, 2003).

## III. Discussion

It is undisputed that Continental has failed to participate in the defense of claims against Bollinger or to pay any claims against Bollinger. It is also undisputed that the primary insurers have not paid their limits or, indeed, paid any claims asserted by the United States against Bollinger. Indeed, there has been no finding of liability against Bollinger in the suit by the United States. Because there has been no finding of liability and primary insurance has not been exhausted, Continental has no duty to indemnify claims against Bollinger. The sole issues are whether Continental owed a duty to defend and, if so, whether its failure to defend was arbitrary and capricious.

### A. The policies do not impose a duty to defend on Continental.

The Court must begin the inquiry into Continental's duty by interpreting the policies at issue. Both parties agree that Louisiana law governs the interpretation of Continental's

insurance policy. An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts under Louisiana law, "which requires judicial determination of the common intent of the parties to the contract." *Thermo Terratech v. GDC Enviro-Solutions, Inc.*, 265 F.3d 329, 334 (5th Cir.2001) (citing *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 763 (La. 1994); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir.2007) (quoting *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003)). "The parties' intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have a technical meaning." *Louisiana Ins. Guar. Ass'n*, 630 So.2d at 763. "An insurance contract must be 'construed according to the entirety of its terms and conditions as set forth in the policy and as modified by any endorsement made a part of the policy.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d at 206 (quoting La.Rev.Stat. § 22:654 (2004)). An insurance contract should not be interpreted "in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or restrict its provisions beyond what is reasonably contemplated by unambiguous terms or [to] achieve an absurd conclusion." *Id.* (quoting *Cadwallader*, 848 So.2d at 580). "If the words of an insurance policy are clear and explicit and lead to no absurd consequences,

no further interpretation may be made in search of the party's intent and the agreement must be enforced as written." *Good Hope Baptist Church v. ICT Ins. Agency, Inc.*, 41 So.3d 1229, 1232 (La.App. 3d Cir. 2010) (citing La. Civ. Code. Art. 2046). Nevertheless, "[i]f any ambiguity remains after applying the general rules of contract interpretation, the ambiguous insurance policy provision is construed against the insurer." *Berry v. Paul Revere Life Ins. Co.*, 21 So.3d 385, 390 (La. 1 Cir. July 9, 2009); *Westerfield v. LaFleur*, 493 So.2d 600, 605 (La .1986). The "[i]nterpretation of an insurance policy usually involves a legal question which can be properly resolved by a motion for summary judgment." *Cutsinger v. Redfern*, 12 So.3d 945, 949 (La. May 22, 2009) (citing *Bonin v. Westport Ins. Corp.*, 930 So.2d 906, 910 (La. 2006).

The terms of the policies indicate that as an excess provider, Continental is not liable to pay claims until the primary insurance has been exhausted and does not owe a duty to defend. The Excess Bumbershoot Liability provision indicates that Continental's duty to indemnify is not triggered unless Bollinger's liability exceeds the amount covered under the primary policies:

> **EXCESS BUMBERSHOOT LIABILITY**
>
> These Underwriters agree to indemnify the Assured for all liability, loss, damage or expense insured against under the excess policies described in the Schedule of Underlying Insurances, ... but this insurance is

> warranted free from claim hereunder unless such liability in respect of the same accident ... exceeds the Limits of Liability of the Primary Policies in which event these Underwriters shall be liable only from the amount by which such liability exceeds such underlying Limits of Liability, but in no event for more than the Limit of Liability of this insurance.[2]

The policies also provide that Bollinger has the right to participate in Bollinger's defense but has no obligation to do so. Each policy contains the following General Condition:

> These Underwriters shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceeding instituted against the Assured, but these Underwriters shall have the right and shall be given the opportunity ... to associate with the Assured or the underwriters on the Primary Policies, or both, in defense and control of any claim, suit or proceeding which involves or appears likely to involve these Underwriters...[3]

The Fifth Circuit has interpreted a nearly identical provision as "unambiguously excluding a defense obligation under Louisiana law," even when the claim appears likely to involve the excess carrier. *See Inst. of London Underwriters v. First Horizon Ins. Co.*, 972 F.2d 125, 126 (5th Cir. 1992) (citing *Hartford Accident & Indem. Co. v. United Gen. Ins. Co.*, 855 F.2d 228, 231 (5th Cir. 1988)). That case held that the clause "imposes no affirmative duty on [the excess insurer] to co-operate in the defense if the claim is likely to involve" the excess insurer, but rather, the "provision leaves [the excess insurer] with the

---

[2] *Id.*

[3] Exhibit 3, at CON-0344.

option-the 'right and opportunity'-to associate in the defense of claims involving or likely to involve" it. *Inst. of London Underwriters*, 972 F.2d at 127. "The decision whether to associate in the defense of the assured still rests" with the excess insurer. *See Id.* Bollinger has cited no case indicating that the Fifth Circuit's ruling in *Inst. of London Underwriters* does not apply in this case. Indeed, it does not even cite this case.

Instead, Bollinger contends that other provisions in the policies indicate that Continental owed a duty to defend because the total damages in the government's suit could exhaust primary coverage. It points to Endorsement No. 8, which provides:

> It is agreed that this policy shall not apply to any obligation to pay fines, penalties or exemplary, or punitive damages including treble damages, or any other damages resulting from the multiplication of compensatory damages. If a suit shall have been brought against the insured for claim insured by this policy seeking both compensatory and punitive or exemplary damages, then this company will afford a defense to such action. The Company, however, shall not have an obligation to pay for any costs, interest, or damages attributable to fines, punitive or exemplary damages.[4]

Although Endorsement No. 8, when read in isolation, suggests that Continental had a duty to defend and insure against compensatory damages, it must be read in light of the other provisions stating that Continental's coverage begins only when

---

[4] Exhibit 3, at CON-0355.

the coverage provided by primary insurers has been exhausted. *See In re Katrina Canal Breaches Litig.*, 495 F.3d at 206 ("An insurance contract must be construed according to the entirety of its terms and conditions as set forth in the policy"). In this same vein, the endorsement kicks in only if a suit is brought against the insured for a "claim [insured by] this policy." Because a claim is not insured under the excess policy until the liability of the insured exceeds the underlying limits, the endorsement does not create a defense obligation before the underlying limits are exhausted. Moreover, this endorsement is designed as an exclusion of fines, penalties, and exemplary or punitive damages. Finally, even if this endorsement could be read as negating the discretion of the excess insurer to participate in the defense granted in the General Condition quoted above, it does not create a clear duty to pay defense costs now before the primary insurance is exhausted.

   Bollinger also refers to Endorsement No. 5:

> These underwriters agree to pay on behalf of the Assured for all liability, loss, damage or expense insured against under the policies described in the Schedule of Underlying Insurance (hereinafter referred to in this section and in the General Conditions as the "Primary Policies"), but this insurance is warranted free from claim hereunder unless such liability in respect to the same accident (or occurrence if the limits of liability of the primary policies are written on an occurrence basis) exceeds the Limits of Liability of the Primary policies in which event these underwriters shall be liable only for the amount by which such liability exceeds such Underlying Limits of

>Liability, but in no event for more than the Limit of Liability of this Insurance.[5]

Contrary to Bollinger's interpretation, Endorsement No. 5 confirms Continental's view of the policies that Continental is liable to indemnify only if "such liability exceeds such Underlying Limits of Liability." Bollinger is unable to point to any other provision indicating that Continental has a duty to defend when the primary insurance policy has not been exhausted.

    Bollinger relies on a dictum in *Edwards v. Daugherty*, 883 So. 2d 932, 946 n. 18 (La. 2004), to support its position that Continental has breached in bad faith a duty to defend Bollinger. In a footnote, *Edwards* said that the Louisiana Supreme Court "has held that while the primary insurer has the primary duty to defend, if a claim is within the limits of the excess insurance, there is also a duty of the excess insurer to defend." *Id.* (citing *American Home Assurance Company v. Czarniecki*, 255 La. 251, 230 So.2d 253 (1969)). The issue involved in *Edwards* was the extent to which a surplus lines insurer which had elected to defend a claim it was not obligated to defend could deduct defense costs from its policy limits. *See Id.* at 945-46. Its holding does not support a

---

[5] Page 11 of the first PDF Continental places on its CD of manual attachments. It is undisputed that the other policies contain the same endorsement. *See* R. Doc. 29 at 13.

finding that Continental was in bad faith here. Further, *Czarniecki*, the case cited in the *Edwards* footnote, held that an excess carrier "is liable only where the limits of the [primary policy] are exceeded." 255 La. at 260. It did not hold an excess carrier in bad faith on facts such as those presented here.

**B. Continental did not act in bad faith**

Even if the Court determined that Continental were required to pay Bollinger's defense, a finding of bad faith is inappropriate when, as here, an excess insurer lacks a clear duty to pay. Bollinger has the burden of establishing that Continental acted in bad faith. *Dickerson*, 556 F.3d at 297. Bollinger fails to meet this burden because, as discussed above, the policies indicate that Continental did not owe a clear duty to defend or pay claims before Bollinger had exhausted its primary coverage. Thus, because Continental reasonably believed that the primary layer of insurance had not been exhausted and that Continental did not owe a duty to defend, Continental did not act in bad faith in refusing to pay or defend Bollinger's claims. *Id.* at 300 (insurer does not act arbitrarily and capriciously "when it withholds payment based on a genuine (good faith) dispute about the amount of a loss or the applicability of coverage").

15

Louisiana courts have consistently declined to find bad faith when doubt existed as to whether the plaintiff was covered under the defendant's insurance policy. In *Howell v. American Cas. Co.*, 691 So.2d 715, 727–28. (La. App. 4th Cir. 1997), the court found that the defendant excess insurer was not arbitrary and capricious in declining to defend a corporation because the defendant reasonably believed that the primary layer of insurance had not been exhausted. Even though it was determined on appeal that the primary layer of insurance had been exhausted, the court concluded that the defendant did not act in bad faith in refusing to defend the corporation because the trial court was uncertain as to whether the primary layer of insurance had been exhausted. *Id.* Similarly, in *Lightfoot v. Hartford Fire Ins. Co.*, CIV.A. 07-4833, 2010 WL 4879175 (E.D. La. Nov. 23, 2010), the court determined that the defendant excess insurer was not arbitrary and capricious in declining to pay claims when there was a dispute as to whether the primary policy had been exhausted by way of a settlement for less than the full primary coverage. Likewise, in *McGrew v. State Farm Mut. Auto. Ins. Co.*, 385 So.2d 1276, 1284 (La. App.1980), the court held that the defendant excess insurer was not arbitrary and capricious in denying the plaintiff's claim given that there was a serious dispute as to the amount of the

claim and the extent of coverage provided by the two primary insurers.

Based on the policy terms, Continental reasonably believed that to the extent its policies covered the government's lawsuit against Bollinger, the primary layer of insurance had not been exhausted. Its decision to withhold payment was not a "vexatious refusal to pay," and Continental did not act arbitrarily and capriciously in withholding payment for Bollinger's defense. *See Howell*, 691 So.2d 715, 727–28; *Dickerson*, 556 F.3d at 300. Instead, Continental promptly responded to the claims by notifying Bollinger's agent that it was premature to ask Continental to provide a defense to Bollinger since the primary limit of $26 million had not been exhausted, and Continental could not take a coverage position until the position of the primary carrier, XL Specialty, was known. Because it Continental's duty to pay for Bollinger's defense was not clear at the time of Bollinger's claims, Continental was not in bad faith in refusing to take a coverage position within the statutory 30 and 60 day deadlines for paying claims. *Reed*, 857 So. 2d at 1021 ("Whether or not a refusal to pay is arbitrary, capricious, or without probable cause depends on the facts known to the insurer at the time of its action."). For these reasons, the Court grants partial summary judgment in favor of Continental and dismisses

Bollinger's claims under La. Rev. Stat. Ann. § 22:1892 and La. Rev. Stat. Ann. § 22:1973.

New Orleans, Louisiana, this __24th__ day of June, 2013

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE