```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA

XL SPECIALTY INSURANCE COMPANY              CIVIL ACTION

VERSUS                                      NO: 12-2071

BOLLINGER SHIPYARDS, INC., ET               SECTION: R(2)
AL.
```

## ORDER AND REASONS

Bollinger Shipyards, Inc., Bollinger Shipyards Lockport, L.L.C., and Halter Bollinger Joint Venture, L.L.C. (collectively "Bollinger") move the Court for partial summary judgment against Bollinger's insurer, National Union Fire Insurance Company of Pittsburg, Pa., and National Union's claims administrator, Chartis Claims, Inc.[1] The Court DENIES Bollinger's motion because it has failed to show that a claim was made against it during the applicable policy period, and it is therefore not entitled to coverage or defense costs under its policy with National Union.

## I. BACKGROUND

This lawsuit arises out of Bollinger's involvement in the United States Coast Guard's Deepwater program to modernize its fleet of water vessels, aircraft, and electronics systems.[2] The United States selected Integrated Coast Guard Systems (ICGS) to serve as lead contractor of the program, and ICGS in turn

---

[1] R. Doc. 76.

[2] R. Doc. 76-5 at 4.

subcontracted a portion of that work to Bollinger.[3] Bollinger was responsible for converting eight 110-foot cutters into 123-foot cutters.[4] Bollinger delivered the first of these vessels to the Coast Guard in March 2004.[5] In September 2004, that vessel suffered a structural casualty.[6] According to the United States, a subsequent Coast Guard and IGCS investigation revealed that Bollinger had misrepresented the longitudinal strength of the hulls of the cutters it delivered to the United States.[7]

On December 23, 2008, the United States executed a tolling agreement with Bollinger.[8] The agreement provided in relevant part:

> WHEREAS, On December 5, 2008 the United States of America informed Bollinger . . . that the United States . . . [believes it] may have certain civil causes of action and administrative claims against Bollinger under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, other statutes and regulations including the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801 *et seq.*, equity, or the common law, arising from Bollinger's performance of conversion work on the U.S. Coast Guard Deepwater Program's 110 Foot Island Class vessels . . .; and

---

[3]   *Id.* at 5.

[4]   *Id.* at 5, 10.

[5]   *Id.* at 10.

[6]   *Id.* at 11.

[7]   *Id.*

[8]   R. Doc. 77-3.

> WHEREAS, the parties have entered into discussions relating to the possible settlement of the United States's above claims prior to suit;
>
> NOW, THEREFORE, . . . the United States and Bollinger agree that, as consideration for the United States not filing, or initiating claims against Bollinger under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, or the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801 *et seq.*, on or before December 31, 2008, the period of time between and including December 5, 2008 and May 5, 2009 shall be excluded when determining whether any civil or administrative claims are time-barred by the statute of limitations, laches, or any other time-related defenses. Bollinger further agrees it will not . . . plead statute of limitations, laches, or any other similar defense to any civil or administrative action filed or initiated against Bollinger on or before May 5, 2009 under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, other statutes and regulations, including the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801 *et seq.*, equity or the common law, based on the performance of conversion work on the U.S. Coast Guard Deepwater Program's 110 Foot Island Class vessels . . . .[9]

On July 29, 2011, the United States filed a complaint against Bollinger based on allegations that "Bollinger knowingly misled the Coast Guard to enter into a contract for the lengthening of Coast Guard cutters by falsifying data relating to the structural strength of the converted vessels."[10] The United States' complaint alleged two violations of the False Claims Act, as well as common law fraud, negligent misrepresentation, and unjust enrichment.[11]

---

[9]   *Id.* at 1.

[10]  R. Doc. 76-5 at 2.

[11]  *Id.* at 12-14.

On August 3, 2011, days after the underlying suit was filed, Bollinger put National Union and Chartis on notice of the suit.[12] Bollinger held a Directors, Officers, and Private Company Liability Insurance Policy with National Union ("the D&O Policy").[13] The policy covered defense costs and liability for claims first made against Bollinger during the "Policy Period" of March 1, 2011 to March 1, 2012.[14]

On August 4, Chartis acknowledged receipt of Bollinger's claim.[15] On August 30, Chartis informed Bollinger via letter that the underlying suit was not covered under the D&O Policy because, among other things, the United States' "claim" was first made in December 2008, when the tolling agreement was executed -- over two years before the Policy Period began.[16] After multiple unsuccessful attempts to convince Chartis and National Union that the D&O Policy covered the United States' lawsuit,[17] Bollinger sued Chartis and National Union in state court.[18] Defendants

---

[12] R. Doc. 76-5 at 1.

[13] *See* R. Doc. 76-13.

[14] *Id.* at 1.

[15] R. Doc. 76-6.

[16] R. Doc. 76-7 at 2-3.

[17] *See* R. Docs. 76-8, 76-9, 76-10, 76-11.

[18] *See Bollinger Shipyards, Inc. et al. v. National Union Fire Insurance Company of Pittsburg, Pa. et al.*, No. 12-cv-2167, R. Doc. 1.

removed the case to federal court on August 24, 2012, and the Court eventually consolidated it with this matter.[19] Bollinger now asks the Court to find as a matter of law that the D&O Policy entitles Bollinger to the defense costs it has incurred in the underlying suit. Bollinger also seeks an award of statutory penalties, attorneys' fees, costs, and interest.

## II. STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo*

---

[19] R. Doc. 19.

*v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.; Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry

of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

## III. DISCUSSION

The parties agree that Louisiana law governs this case. In Louisiana, an insurance policy "should be construed by using the general rules of interpretation of contracts set forth in the Civil Code." *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 763 (La. 1994). "The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent." *Id.* (citing La. Civ. Code art. 2045). If the words of the contract are "clear and explicit and lead to no absurd consequences," the plain meaning of the contract prevails, and "no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046; *id.* art. 2047 (words of a contract should be given their "generally prevailing meaning," unless the words have acquired a technical meaning).

If there is ambiguity in an insurance policy, the ambiguity must be resolved in favor of the insured. *La. Ins. Guar. Ass'n*, 630 So.2d at 764; *see also* La. Civ. Code art. 2056 ("A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party."). This rule of

strict construction should be applied only if the contract is actually ambiguous; it "does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating ambiguity where none exists." *Reynolds v. Select Props., Ltd.*, 634 So.2d 1180, 1183 (La. 1994) (quoting *Union Ins. Co. v. Advance Coating Co.*, 351 So.2d 1183, 1185 (La. 1977)); *see also La. Ins. Guar. Ass'n*, 630 So.2d at 764 ("When the language of an insurance policy is clear, courts lack the authority to change or alter its terms under the guise of interpretation."). Moreover, "insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy." *Reynolds*, 634 So.2d at 1183.

National Union insured Bollinger under a claims made policy, which provides coverage for claims first made against the insured during the policy period.[20] The primary dispute between the parties concerns when the United States' claim was first made against Bollinger. National Union and Chartis contend that the claim was first made in 2008, when the tolling agreement was executed. If this is correct, then the D&O Policy does not cover the claim, since the D&O Policy's "Policy Period" runs from March

---

[20] *See* R. Doc. 76-13 at 6 ("This policy shall pay the Loss of the Company arising from a . . . Claim first made against the Company . . . during the Policy Period . . . and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act . . . .").

1, 2011 to March 1, 2012.[21] Bollinger on the other hand, argues that the United States' claim was first made in July 2011, when the lawsuit was filed. If Bollinger is right, then the D&O Policy covers the claim, unless an exclusion applies.

The plain language of the D&O Policy resolves this dispute definitively in favor of National Union and Chartis. The policy defines the term "claim," in relevant part, as follows:

> (1) a written demand for monetary or non-monetary relief (*including any request to toll or waive the statute of limitations*); [or]
> (2) a civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by:
>  (i) service of a complaint or similar pleading;
>  (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or
>  (iii) receipt or filing of a notice of charges . . .[22]

The tolling agreement between Bollinger and the United States stated that the government believed that it had claims against Bollinger arising from its performance of the conversion work for the ICGS, and memorialized Bollinger's agreement to toll the statute of limitations so that the parties could discuss settlement of those claims before engaging in litigation.[23] Clearly, then, under the language of the D&O Policy, the United States' "claim" against Bollinger was first made in 2008, over

---

[21] *Id.* at 1.

[22] R. Doc. 76-13 at 63 (emphasis added).

[23] *See* R. Doc. 77-3 at 1.

two years before the policy period began. *Cf. Precis, Inc. v. Fed. Ins. Co.*, 184 F. App'x 439, 440-41 (5th Cir. 2006) (finding that claim was first made against insured when it received letters demanding money and "threaten[ing] litigation if a settlement could not be reached" because the policies in question defined "claim" as including "a written demand for monetary damages"); *Specialty Food Sys., Inc. v. Reliance Ins. Co. of Ill.*, 45 F. Supp. 2d 541, 543 (E.D. La. 1999) (finding that an Equal Employment Opportunities Commission charge against the insured constituted a "claim" for purposes of a claims first made policy because the policy defined "claim" to include "any written demand or notice received by an Insured from . . . any administrative agency advising that it is the intention of a person to hold the Insured responsible for the consequences of a Wrongful Employment Practice"), *aff'd*, 200 F.3d 816 (5th Cir. 1999); *cf. also Jensen v. Snellings*, 841 F.2d 600, 616 (5th Cir. 1988) (noting that "the making of a claim can be something less than the filing of a lawsuit").

  Bollinger contends that the above reasoning does not apply to the United States' claims for negligent misrepresentation and unjust enrichment. It argues that the tolling agreement concerned only "the United States' rights regarding 'claims against Bollinger under the False Claims Act, 31 U.S.C. §§ 3729, *et seq.*, other statutes and regulations, including the Program Fraud Civil

Remedies Act, 31 U.S.C. §§ 3801, *et seq*,'" and did not provide Bollinger with notice of the unjust enrichment and negligent misrepresentation claims.[24] Thus, according to Bollinger, the latter two claims were first made when the United States filed suit in July 2011. In support of this argument, Bollinger submits an affidavit from the CFO of Bollinger Shipyards, Inc., stating that "[r]eceipt of the U.S. lawsuit was the first time Bollinger learned that the United States would allege it had negligently misrepresented anything, or that it had enriched itself unjustly."[25] Bollinger purports to distinguish *Specialty Foods* on the basis that there, "the EEOC claim made by the plaintiff consisted of substantially the same allegations as the lawsuit he later filed."[26]

Bollinger is incorrect. The tolling agreement was not limited to claims "based solely on fraud and dishonesty,"[27] as Bollinger's selective quotation of it would suggest. In fact, the tolling agreement stated that

---

[24] R. Doc. 87 at 3 (quoting the tolling agreement); *see also id.* at 4 ("[T]he Tolling Agreement represents awareness of a claim based solely on fraud and dishonesty, but the lawsuit filed by the United States aggregated multiple claims, including the never before made claims for Negligent Misrepresentation and Unjust Enrichment.").

[25] R. Doc. 76-4 at 2.

[26] R. Doc. 87 at 3-4.

[27] *Id.* at 4.

> [o]n December 5, 2008 the United States of America informed Bollinger . . . that the United States . . . [believes it] may have certain civil causes of action and administrative claims against Bollinger under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, other statutes and regulations including the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801 *et seq.*, *equity, or the common law, arising from Bollinger's performance of conversion work on the U.S. Coast Guard Deepwater Program's 110 Foot Island Class vessels* . . . .[28]

The tolling agreement put Bollinger on notice that the United States was considering bringing claims based on Bollinger's work on the 123-foot cutters under one or more of the following: the False Claims Act, the Program Fraud Civil Remedies Act, equity, or the common law. The United States' allegations of negligent misrepresentation and unjust enrichment concerned precisely that work and were rooted in the common law and equity, respectively. The entire underlying lawsuit thus falls comfortably within the language of the tolling agreement. In other words, just as in *Specialty Foods*, the United States' tolling agreement concerned "substantially the same allegations as the lawsuit [it] later filed."[29] *See Specialty Foods*, 45 F. Supp. 2d at 542-43; *see also Precis*, 184 F. App'x at 440-41 (finding that claim was first made against insured when it received letters demanding money and threatening litigation -- not when a lawsuit was actually filed -- because "the underlying

---

[28] R. Doc. 77-3 at 1 (emphasis added).

[29] R. Doc. 87 at 3-4.

conduct complained of in the . . . suit was the same conduct complained of in the . . . letters").

In sum, the Court finds that the claims in the underlying suit were first made by December 2008, when the tolling agreement was executed. Coverage under the D&O Policy is "limited to liability for only those claims that are first made against the insured during the policy period" of March 1, 2011, to March 1, 2012.[30] Accordingly, the underlying suit is not covered by the policy.

Because the Court has determined that Chartis and National Union are correct in their assessment that the D&O Policy does not cover the underlying suit, Bollinger's claim that it is entitled to penalties, fees, costs, and interest necessarily fails.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Bollinger's motion for summary judgment.

Because the Court has found that the United States' claims were first made against Bollinger before the inception of the applicable policy period, summary judgment in favor of National Union and Chartis appears warranted. Under Federal Rule of Civil Procedure 56(f), a district court may grant summary judgment for

---

[30] R. Doc. 76-13 at 1.

a nonmovant "[a]fter giving notice and a reasonable time to respond." Therefore, if Bollinger believes that it can show that there exists a genuine dispute of material fact regarding the liability of National Union and Chartis, it must respond within fourteen (14) days of this order. *Cf. Stingley v. Den-Mar, Inc.*, 347 F. App'x 14, 17-18 (5th Cir. 2009) (upholding district court's decision to enter summary judgment against a nonomvant after giving the nonmovant ten business days' notice to present evidence). If Bollinger cannot do so, the Court will enter judgment in favor of National Union and Chartis.

New Orleans, Louisiana, this 3rd day of January, 2014.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE