UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

XL SPECIALTY INSURANCE CO.                    CIVIL ACTION

VERSUS                                        NO. 12-2071 &
                                                 consol'd cases

BOLLINGER SHIPYARDS, INC. ET AL.              SECTION "R"(2)

## ORDER AND REASONS ON MOTION

These consolidated cases involve a dispute between allegedly insured parties (hereinafter collectively referred to as "Bollinger") and their alleged primary insurer, XL Specialty Insurance Company ("XL").  Bollinger seeks coverage, including reimbursement of attorneys fees and defense costs, and the recovery of other damages arising from a separate suit, which was previously pending in this court, brought against Bollinger by the United States.  C.A. No. 12-920 "R"(5).  XL seeks a declaration that its policy of insurance provides no such coverage.

XL's Motion to Compel and for Sanctions for Failure to Comply with my August 7, 2013 Order, Record Doc. No. 98, was taken under advisement following oral argument on January 15, 2014.  Having considered the record, the applicable law and the written and oral representations of counsel, **IT IS ORDERED** that the motion is DISMISSED AS MOOT IN PART, GRANTED IN PART AND DENIED IN PART as follows.

Because XL's motion papers described the relief sought in overly broad and unduly vague terms, I required XL's counsel at oral argument to specify by number the particular

written discovery responses which XL argues are deficient and any other specific remedies sought. Counsel identified the following matters in dispute: (1) Bollinger's answers to Interrogatories Nos. 11, 15, 17 and 18 of XL's first set of written discovery requests; (2) Bollinger's responses to Requests for Production Nos. 8, 12, 16 and 18 of XL's first set of written discovery requests; (3) Bollinger's responses to Requests for Admissions Nos. 1-4, 10-13, 15, 16, 20, 23, 33, 34, 35, 37 and 38 in XL's second set of written discovery requests; (4) Bollinger's responses to Requests for Production Nos. 1, 2, 3 and 7 of XL's second set of written discovery requests; (5) the logistics and manner of Bollinger's actual production of responsive materials, including their searchability, organization and identification as responsive to particular requests; (6) the adequacy of Bollinger's privilege logs; and (7) the propriety of redactions in Bollinger's billing statements for attorney's fees already produced to plaintiff.

Having identified the foregoing as the particular items in dispute, **IT IS ORDERED** that XL's motion is dismissed as moot to whatever extent, if any, that it seeks additional relief beyond that specified above.

(A)     Interrogatories

The motion is denied insofar as it seeks additional answers to the identified interrogatories in XL's first set of written discovery requests. As to Interrogatories Nos. 11 and 15, the current answers, which have been verified, are sufficient, as long as they are

true. No persuasive evidence of falsity or any other violation of Fed. R. Civ. P. 26(g) has been presented.

As to Interrogatories Nos. 17 and 18, these are contention interrogatories of the type contemplated by Fed. R. Civ. P. 33(a)(2). The general nature of the answers matches the general nature of the questions. As provided in Rule 33(a), further supplementation of these answers, if any becomes necessary under Fed. R. Civ. P. 26(e), need not be made before the discovery deadline.

(B)     Requests for Production (First Set)

As to the portion of the motion seeking additional responses to certain requests for production in XL's first set of written discovery requests, the motion is denied as to Requests for Production Nos. 8 and 12 of XL's first set of requests for production, subject to the order concerning the manner in which these materials have been identified later in this opinion.

The motion is granted as to Request for Production No. 16 of the same set. The current written response is vague, evasive and largely fails to respond to the request. The current response states only that "[b]y correspondence of April 19, 2013, Bollinger has already provided this information."  Record Doc. No. 98-2 at p. 30 of 53.  This is a Rule 34 request.  As such, it does not seek "information" like might be sought via interrogatory, but production of tangible materials such as "documents supporting the damages claimed by you, including financial records and invoices . . ."  The April 19, 2013 correspondence

3

referred to in the response does <u>not</u> produce the requested materials, but only a "<u>summary</u> of legal costs that Bollinger has incurred."   Record Doc. No. 107-5 at p. 1 (emphasis added). The "summary" attached to the correspondence is itself written in some sort of indecipherable code.  The written response goes on to say that "Bollinger will supplement this response," implying that whatever production of responsive materials, if any, that it has made is incomplete. Thus, **IT IS ORDERED** that Bollinger must provide a new written response to Request No. 16, which clearly states without objection, that copies (in either paper or electronic format) of <u>all</u> non-privileged materials responsive to this request are attached to the new written response and/or identifies those materials by particular Bates stamp or other identifying mark in the materials already produced.

The motion is also granted as to Request for Production No. 18, but only as follows. The current written response is incomplete and evasive in that it states only that Bollinger is "not in possession" of the requested materials. Record Doc. No. 98-2 at p. 31. Bollinger's discovery obligations under Rule 34 extend beyond merely what is in its possession and instead include materials that are in its "possession, custody, <u>or</u> <u>control</u>." Fed. R. Civ. P. 34(a)(1) (emphasis added). "Control" includes the legal right to obtain documents upon demand, even though the responding party may in fact have no copies in its possession. 8B C. Wright, A. Miller, R. Marcus, <u>Federal Practice and Procedure</u> § 2210 at p. 149-50 and cases cited in n.5 (West 2010 ed.)  The current written response indicates that responsive materials may be in the possession of Bollinger's insurance brokers or its

insurers.  It is unclear whether these insurance third parties may or may not be Bollinger's agents or contractual partners from whom Bollinger may or may not legally demand such materials.  Bollinger must provide a new written response to this request clarifying these uncertainties and – if Bollinger has a legal right to obtain the requested materials from its insurance brokers and/or insurers upon demand – it must do so and then produce the responsive materials.

(C)     Requests for Production (Second Set)

As to the portion of the motion seeking additional responses to certain requests for production in XL's second set of written discovery requests, the motion is denied as premature as to Requests Nos. 1 and 2, but without prejudice to a new motion being filed as to these requests after Bollinger complies with this order. On one hand, it appears that while Bollinger has produced some responsive non-privileged materials, these requests are so broadly worded that it is easily conceivable that they could also extend to privileged materials. On the other hand, it is difficult to conceive that "agreements" between corporations of the type sought in these requests could somehow be privileged. Complicating matters are the deficiencies in portions of Bollinger's privilege logs addressed below. Accordingly, no definitive ruling as to the merits of the privilege objections in response to these two requests can be made at this time. After Bollinger provides the supplemental privilege logs ordered below, counsel must confer in a good

faith effort to resolve any dispute concerning these responses. If no resolution can be reached, a new motion focused on the privilege assertions may be filed.

The motion is granted as to Request No. 3 of the second set of requests because Bollinger's current answer is schizophrenic and therefore confusing and evasive.  In one sentence of its response, Bollinger asserts privilege objections, indicating that some responsive materials are being withheld from production. In the final sentence, the response states that "Bollinger has produced all such documents" (emphasis added). Which is it? Bollinger must provide a new written response to this request that clearly states that it has produced all responsive non-privileged materials and lists by Bates stamp or other identifying mark those materials, and then clearly states that it either is or is not withholding responsive materials on privilege grounds and list any such withheld materials in a supplemental privilege log.

The motion is granted as to Request No. 7 of the second set of requests because Bollinger's current response is evasive and non-responsive.  The objection is overruled. Bollinger is directed to read the request, which states in pertinent part: "please produce all documents provided to XL in response to the request for documents made by counsel for XL, Kenneth G. Engerrand, in his email dated November 9, 2011" (emphasis added). Bollinger's written response then refers to "information" – not documents – it provided to XL on July 27 and August 2, 2011, at least two months before the subject email request, with a later reference to certain attached documents. It is impossible that materials provided

on July 27 and August 2, 2011 could have been provided "<u>in response to</u> . . . [an] email"
sent two months <u>later</u>, unless by its vague "see attached" reference to certain documents
Bollinger means to say that those are documents it provided <u>after</u> and therefore in response
to the emailed request.  Bollinger must provide a new written response to this request
clearly stating, without objection, either that it has no such documents in its possession,
custody or control [in which case a new response to Request for Admission No. 33 would
also appear appropriate, as discussed below] or that it has produced all responsive
materials, including a list of Bates stamp or other marks identifying those materials.

(D)     <u>Requests for Admissions</u>

        As to the Requests for Admissions contained in XL's second set of discovery
requests, XL complains generally that the responses do not provide either additional
responsive information or production of documents, as the odd tack-ons to XL's requests
for admissions seek.  In this regard, XL has exceeded the scope of a permissible request for
admissions under Rule 36.

        The so-called "General Instructions" contained in XL's written discovery request
to defendant are erroneous in part, need not be obeyed by Bollinger and will not be
enforced by this court to the extent that they are inconsistent with or unauthorized by the
Federal Rules of Civil Procedure. For example, XL's "General Instruction" No. 1, Record
Doc. No. 98-5 at p. 7, states: "To the extent Bollinger's responses to the Requests for
Admissions require the production of information or documents, they should be treated as

7

Interrogatories and Requests for Production." Such an odd interpretation finds no support in and/or conflicts with the Federal Rules of Civil Procedure. XL's "general instruction" would serve as a means of permitting a party to evade the limit on the number of interrogatories, which XL has already reached, Record Doc. No. 98-2 at p. 52, without leave of court. Fed. R. Civ. P. 33(a)(1). It would create the kind of "unreasonably cumulative or duplicative" discovery prohibited by Fed. R. Civ. P. 26(b)(2)(C)(i). It would confuse the separate delineation of discovery devices and their particular purposes, unnecessarily expand the tools of discovery beyond those permitted by the Rules and undermine the orderly conduct of discovery and the fixed standards for resolving discovery disputes provided in the Rules themselves.

The permissible scope of a valid request for admission is established in Fed. R. Civ. P. 36(a)(1), which does not contemplate the production of documents in response to such requests. On the contrary, it is the requester, not the respondent, who on occasion must provide a copy of any document whose genuineness is at issue. Fed. R. Civ. P. 36(a)(2). No information in response to a request for admission need be provided by the respondent, except to the extent required by Fed. R. Civ. P. 36(a)(4). Thus, XL's motion is denied to the extent that it seeks responses to the odd tack-ons seeking document production or additional information included in its requests for admissions. Instead, the only standard I will apply to XL's motion concerning Bollinger's responses to requests for admissions is Rule 36(a)(4), which provides:

If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.

The motion is granted as to Requests for Admissions Nos. 1, 2, 3, 4, 10, 12, 13, 16, 23, 37 and 38 (even as supplemented), but only subject to the order contained herein. Bollinger's objections are sustained in that **IT IS ORDERED** that, as to any of these requests that has resulted in a Bollinger objection concerning the quoted statements (which indicate that XL is relying upon some unidentified document, testimony or other communication as the source or basis of these requests), XL must serve Bollinger, no later than **February 3, 2014**, with new versions of these requests specifically identifying the source of these quotations. If XL does so, Bollinger must then provide responses that comply with Rule 36(a)(4) by the deadline set below. If not, no further response is required. As to all of these requests, in its current responses Bollinger has admitted some only in part, while denying others or parts of others "as written" with no further Rule 36(a)(4) statement as to why the remainder is denied. These partial denials "as written" render the responses vague and evasive. Bollinger must provide new responses that either flatly deny the portion of the request that it does not admit, or that state in detail why it cannot truthfully admit or deny the remainder, or must in good faith qualify its denials of the rest.

The motion is granted as to Request for Admission No. 20, because the current response is obtuse. If the appropriate response to No. 20 is "admitted, except as to the

capitalized 'At'," Bollinger must clearly say so without the evasiveness of the "denied as written" response. It must provide a response that complies with Rule 36(a)(4).

The motion is denied as to Request for Admission No. 11. Although the objection is well-founded, the response contains an unqualified specific denial of the type contemplated by Rule 36(a)(4).  The motion is denied as to Request for Admission No. 15. The response is sufficient.

The motion is denied at this time as to Request No. 33, which Bollinger unequivocally denied, but subject to the order contained in this paragraph.  Such a denial is sufficient, as long as it is true.  However, doubt currently hangs over the veracity of this response, in light of the odd response Bollinger has provided to related Request for Production No. 7 in XL's second set of requests for production discussed above. **IT IS ORDERED** that Bollinger must re-think its response to Request for Admission No. 33 in light of the new response I have ordered as to Request for Production No. 7 and provide a new response to Request for Admission No. 33, if necessary.

The motion is granted as to Request No. 34. The objection is overruled. Bollinger must provide a response that complies with Rule 36(a)(4).

The motion is denied as to Request No. 35. Although this response begins with the objectionable "denied as written," it goes on to comply sufficiently with Rule 36(a)(4).

(E)      Logistics of Production

As to the portion of the motion seeking relief concerning the logistics and manner in which documents have been made available to XL by Bollinger for inspection and related Rule 34 activities, the motion is granted in limited part and denied as to the remainder as follows. XL complains that "rather than providing individual, tailored responses to each of XL's discovery requests, . . . Bollinger simply produced to XL a largely unsearchable database of more than 808,000 documents, consisting of more than four million pages marked with 197 unique (and undefined Bates ranges . . . . without providing the information or tools necessary to navigate those documents, . . ;" for example, "an explanation of the document naming and numbering system" used by Bollinger.  Record Doc. No.  98-1 at p. 3. More specifically, XL complains that "[m]any of the documents in the database [produced to it by Bollinger] had been entered as scanned documents and/or lacked elements of metadata that usually accompany native files, significantly hampering review."  Id. at n. 2.

Bollinger responds that the documents it has produced "are OCR [optical character recognition] recognized and can be searched electronically, . . ."  Record Doc. No. 106 at p. 2.

Most of XL's complaints are unavailing. Initially, a discovering party is not automatically entitled to receive documents in a particular electronically stored form, complete with metadata or in native format. If XL desired that the responsive materials be

produced in some particular electronic format with specific computer or electronic properties, including useable metadata, it was required first to "specify the form or forms in which electronically stored information ["ESI"] is to be produced."  Fed. R. Civ. P. 34(b)(2)(B).  No such specification was included in the requests for production with which I have been provided.  <u>See</u> Record Doc. No. 98-5 ("General Instructions" and "Definitions" at pp. 7-10 of 22; 109-1 ("General Instructions" and "Definitions" at pp. 1-3 of 17). Even if the required ESI specification had been made, the question of whether production in some particular electronic form or format, including native format with useable metadata, would have been open to debate. Fed. R. Civ. P. 26(b)(2)(C)(iii); <u>see</u> <u>Wyeth v. Impax Laboratories, Inc.</u>, 2006 U.S. Dist. LEXIS 79761, at *5 (D. Del. 2006) ("<u>if</u> the requesting party can demonstrate a particularized need for the native format, a court may order it produced"); <u>Williams v. Sprint/United Management Company</u>, 230 F.R.D. 640, 651 (D. Kan. 2005) ("Emerging standards of electronic discovery appear to articulate a general presumption <u>against</u> the production of metadata.") (emphasis added); <u>Kentucky Speedway v. National Association of Stock Car Auto Racing, Inc.</u>, Civil Action No. 05-138-WOB, 2006 U.S. Dist. LEXIS 92028, 23 (E.D. Ken. Dec. 18, 2006) (absent agreement about or particularized need for metadata, "the production of metadata [was] not warranted"); <u>In re Payment Interchange Fee and Merchant Discount Antitrust Litigation</u>, MD 05-1720 (JG) (JO), 2007 U.S. Dist. LEXIS 2650, at *15 (E.D.N.Y. Jan. 12, 2007) (court denied a motion by defendants to produce metadata because such

production would "result in a substantial delay, require the devotion of significant resources, and might not ultimately produce much of the information sought").

Because XL failed to make any Rule 34(b)(2)(B) ESI specification, Bollinger was required only to "produce documents as they are kept in the usual course of business or . . . organize and label them to correspond to the categories in the request; . . ." and as to ESI to "produce it in a form or forms in which it is ordinarily maintained or in a reasonably useable form or forms; . . ." Fed. R. Civ. P. 34(b)(2)(E)(i) and (ii). For the most part, Bollinger did so. Either paper or OCR readable disc is reasonably useable form. It appears from the written responses to the requests for production that the produced documents are individually labeled with an identifying Bates number or other mark, and the current written responses identify by letter codes and numbers the particular materials responsive to particular requests. To whatever extent, if any, that Bollinger has not yet provided XL with the meaning of the document naming and numbering system it has employed in labeling the produced materials, the motion is granted in part in that Bollinger must do so by supplemental written response to XL's requests for production. Beyond that, the motion is denied insofar as it seeks additional logistical relief concerning the manner of Bollinger's production. Whatever burden XL and its counsel face in reviewing these materials that they themselves have requested is rightfully borne by them. Fed. R. Civ. P. 26(b)(2)(C)(iii) and (c).

(F)     Privilege Logs

As to plaintiff's argument that the privilege logs produced by defendant are deficient, a proper privilege log must "describe the nature of the documents, communications or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed. R. Civ. P. 26(b)(5)(A). "The purpose of the privilege log is to provide the parties and the court adequate information to determine whether a document is privileged . . . . Typically, a privilege log must identify each document and provide basic information, including the author, recipient, date and general nature of the document." In re papst Licensing, GmbH Patent Litig.. C.A. MDL 1298, 2001 WL 1135268, at *2 (E.D. La. Sept. 19, 2001)(Sear, J.)(citing Securities &Exch. Comm'n v. Thrasher, C.A. No. 92-6987, 1996 WL 125661, at *1 (S.D.N.Y. Mar. 20, 1996)(citing United States v. Construction Prods. Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996).

Applying this standard to defendant's privilege logs, Record Doc. Nos. 98-6 at p. 23; 100-3 at p. 9; 106-2 at pp. 9-23, I find that the privilege logs provided to XL by Bollinger to date are sufficient for the most part but deficient as to some items. Specifically, the twelve (12) log entries at Record Doc. No. 106-2 at pp. 9-10 ("Bollinger's Supplemental Privilege Log") that identify only Northrup Grumman Ship Systems in the "from" column and Bollinger Shipyards, Inc. in the "recipients" column fail to identify any person(s) as authors and/or transmitters of the document or any person(s) as recipients. In

14

addition, the current descriptions of these documents as agreements or draft agreements between corporations provide <u>no</u> support for any argument and <u>no</u> indication whatsoever that these materials are in any way privileged. Communications between corporations (not lawyers and clients) for business purposes (not for giving or obtaining legal advice) – if that is what these are – are not privileged.

At this time, XL's motion is granted in that Bollinger must <u>either</u> (a) remove these items from its privilege logs and produce them, <u>or</u> (b) provide a proper supplemental log as to these twelve (12) items (a) identifying by name and job title and function the person(s) who drafted and/or transmitted each document, and the person(s) to whom each item was transmitted, and (b) providing a description that explains why they might be privileged. In all other respects the log entries are sufficient and the motion is denied as to them.

(G)     <u>Attorney Billing Statement Redactions</u>

In response to some of XL's requests for production, Bollinger has produced the redacted billing statements of its lawyers, who assert that privileged or work product materials have been redacted for purposes of protecting that kind of information from disclosure. It is undisputed, however, that defense costs, including attorneys fees, incurred by these lawyers in defense of the separate lawsuit against Bollinger prosecuted by the United States are part of its claims for insurance coverage and damages in this case. Record Doc. No. 1-1 in Consolidated C.A. No. 12-2098 (Bollinger's state court petition at ¶'s 1(B), 4, 9, 11 and 13).

The vast majority of the contents of the fee statements are not attorney-client privileged or work product protected in the first instance. "Inquiry into the general nature of the legal services provided by counsel does not necessitate an assertion of the privilege because the general nature of services is <u>not</u> protected by the privilege." <u>Nguyen v. Excel Corp.</u>, 197 F.3d 200, 206 (5th Cir. 1999) (citations omitted) (emphasis added). "As a general rule, client identity and fee arrangements are not protected as privileged." <u>In re Grand Jury Subpoena for Attorney Representing Crim. Defendant Reyes-Requena</u>, 926 F.2d 1423, 1431 (5th Cir. 1991) (citations omitted); <u>accord</u> <u>Vingelli v. United States</u>, 992 F.2d 449, 452 (2d Cir. 1993).

> The attorney-client privilege is construed narrowly, to protect from disclosure only those communications from client to attorney that were intended to remain confidential and made for the purpose of seeking legal advice. Communication between an attorney and client regarding such information as identity of client, terms and conditions of employment, amount of fee, identification of payment by case file name, and the general purpose of the work performed, are not privileged.

<u>In re Ginther</u>, No. 07-80200-G3-11, 2008 WL 4107487, at *5 (Bankr. S.D. Tex. Aug. 29, 2008) (citing <u>United States v. Alexander</u>, 287 F.3d 811 (9th Cir. 2002); <u>Gomez v. Vernon</u>, 255 F.3d 1118 (9th Cir. 2001); <u>Howell v. Jones</u>, 516 F.2d 53 (5th Cir. 1975); <u>United States v. Ponder</u>, 475 F.2d 37 (5th Cir. 1973)) (additional citations omitted); <u>accord</u> <u>In re Bennitt</u>, No. 05-00164-BGC, 2010 WL 4622451, at *6 n.9 (Bankr. N.D. Ala. Nov. 4, 2010) (citing <u>United States v. Leventhal</u>, 961 F.2d 936, 940 (11th Cir. 1992); <u>In re Grand Jury Proceedings 88-9(MIA)</u>, 899 F.2d 1039, 1043-44 (11th Cir. 1990); <u>Nguyen</u>, 197 F.3d at

16

206; GFI, Inc. v. Franklin Corp., 265 F.3d 1268, 1273 (Fed. Cir. 2001); United States v. Legal Servs., 249 F.3d 1077, 1081-82 (D.C. Cir. 2001); In re Grand Jury Subpoena, 204 F.3d 516, 520 (4th Cir. 2000); United States v. Amlani, 169 F.3d 1189, 1194 (9th Cir. 1999); Clarke v. Am. Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992)).

Further, as I and other judges in this court have repeatedly held, to the extent that the attorney-client privilege may arguably protect some portions of invoices, the privilege is waived by seeking reimbursement for attorney's fees. Hunter v. Copeland, No. 03-2584, 2004 WL 1161368, at *5 (E.D. La. May 24, 2004) (citing Clarke, 974 F.2d at 127; Leach v. Quality Health Serv., 162 F.R.D. 499 (E.D. Pa. 1995); United States v. Keystone Sanitation Co., 885 F. Supp. 672, 675 (M.D. Pa. 1994)); Monroe's Estate v. Bottle Rock Power Corp., No. 03-2682, 2004 WL 737463, at *11 n.31 (E.D. La. Apr. 2, 2004), aff'd, 2005 WL 119883 (E.D. La. Jan. 19, 2005); S. Scrap Mat'l Co. v. Fleming, No. 01-2554, 2003 WL 21474516, at *13 n.40 (E.D. La. June 18, 2003); In re Central Gulf Lines, Inc., No. 97-3829, 2001 WL 30675, at *2 (E.D. La. Jan. 11, 2001); Tonti Props. v. Sherwin-Williams Co., No. 99-892, 2000 WL 506015, at *2 (E.D. La. Apr. 27, 2000); Newpark Envtl. Servs., 2000 WL 136006, at *3-4; C.J. Calamia Constr. Co. v. Ardco/Traverse Lift Co., No. 97-2770, 1998 WL 395130, at *2 (E.D. La. July 14, 1998).

The fact that Bollinger's claim for reimbursement of attorneys fees reflected in these statements is a core element of the monetary recovery it seeks in this case necessarily requires Bollinger to place the reasonableness of their attorneys' work and fees at issue.

Thus, Bollinger has waived its privilege (if any) as to these invoices under the "at issue" waiver doctrine.  Dixie Mill Supply Co. v. Continental Cas. Co., 168 F.R.D. 554, 555-56 (E.D. La. 1996) (quoting Smith v. Kavanaugh, Pierson & Talley, 513 So. 2d 1138, 1145 (La. 1987)) (emphasis added); accord Trestman v. Axis Surplus Ins. Co., No. 06-11400, 2008 WL 1930540, at *3-4 (E.D. La. Apr. 29, 2008) (citing Dixie Mill, 168 F.R.D. at 556; Smith, 513 So. 2d at 1145; Merhige v. Gubbles, 657 So. 2d 1098, 1101 (La. App. 4th Cir. 2005); Stumpf v. Stumpf, 613 So. 2d 683, 685 (La. App. 5th Cir. 1993)); Williams Land Co., LLC v. BellSouth Telecomms., Inc., No. 02-1628, 2005 WL 940564, at *2 (E.D. La. Apr. 14, 2005).

The redactions therefore were improper.  XL's motion is granted in that Bollinger must produce unredacted versions of these attorneys fee statements to XL.

\*    \*    \*    \*    \*

XL's motion is denied insofar as it seeks an award of attorneys fees and costs or other sanctions. The motion has been granted in part and denied in part. Under these circumstances, I find that a reasonable apportionment of fees and expenses incurred in connection with this motion is that each side should bear its own, Fed. R. Civ. P. 37(a)(5)(C), and that no other sanctions are warranted.

**IT IS ORDERED** that, no later than **February 24, 2014**, Bollinger must provide XL with all additional written discovery responses, privilege logs and document code

identification information required by this order, together with actual production of all

additional non-privileged responsive materials, if any.

New Orleans, Louisiana, this _____24th_____ day of January, 2014.


JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE