```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA


XL SPECIALTY INSURANCE COMPANY           CIVIL ACTION

                                         NO: 12-2071
VERSUS

                                         SECTION: R(2)
BOLLINGER SHIPYARDS, INC., ET AL.
```

## ORDER AND REASONS

Bollinger Shipyards, Inc., Bollinger Shipyards Lockport, L.L.C., and Halter Bollinger Joint Venture, L.L.C. (collectively "Bollinger") move the Court for relief from the Court's January 3, 2014 order denying Bollinger's motion for summary judgment against its insurer, National Union Fire Insurance Company of Pittsburg, Pa., and National Union's claims administrator, Chartis Claims, Inc.[1] Because the Court finds that its earlier order was not in error, the Court DENIES Bollinger's motion. Furthermore, because Bollinger has failed to show that summary judgment in favor of National Union and Chartis is not appropriate, the Court grants summary judgment to those defendants and dismisses them from the case.

---

[1] R. Doc. 111; *see also* R. Doc. 113 (opposition to the Court's proposed grant of summary judgment in favor of National Union and Chartis).

## I. BACKGROUND

This lawsuit arises out of Bollinger's involvement in the United States Coast Guard's Deepwater program to modernize its fleet of water vessels, aircraft, and electronics systems.[2] The United States selected Integrated Coast Guard Systems (ICGS) to serve as lead contractor of the program, and ICGS in turn subcontracted a portion of that work to Bollinger.[3] Bollinger was responsible for converting eight 110-foot cutters into 123-foot cutters.[4] Bollinger delivered the first of these vessels to the Coast Guard in March 2004.[5] In September 2004, that vessel suffered a structural casualty.[6] According to the United States, a subsequent Coast Guard and IGCS investigation revealed that Bollinger had misrepresented the longitudinal strength of the hulls of the cutters it delivered to the United States.[7]

On December 23, 2008, the United States executed a tolling agreement with Bollinger.[8] The agreement provided in relevant part:

---

[2] R. Doc. 76-5 at 4.

[3] *Id.* at 5.

[4] *Id.* at 5, 10.

[5] *Id.* at 10.

[6] *Id.* at 11.

[7] *Id.*

[8] R. Doc. 77-3.

> WHEREAS, On December 5, 2008 the United States of America informed Bollinger . . . that the United States . . . [believes it] may have certain civil causes of action and administrative claims against Bollinger under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, other statutes and regulations including the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801 *et seq.*, equity, or the common law, arising from Bollinger's performance of conversion work on the U.S. Coast Guard Deepwater Program's 110 Foot Island Class vessels . . .; and
>
> WHEREAS, the parties have entered into discussions relating to the possible settlement of the United States's above claims prior to suit;
>
> NOW, THEREFORE, . . . the United States and Bollinger agree that, as consideration for the United States not filing, or initiating claims against Bollinger under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, or the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801 *et seq.*, on or before December 31, 2008, the period of time between and including December 5, 2008 and May 5, 2009 shall be excluded when determining whether any civil or administrative claims are time-barred by the statute of limitations, laches, or any other time-related defenses. Bollinger further agrees it will not . . . plead statute of limitations, laches, or any other similar defense to any civil or administrative action filed or initiated against Bollinger on or before May 5, 2009 under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, other statutes and regulations, including the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801 *et seq.*, equity or the common law, based on the performance of conversion work on the U.S. Coast Guard Deepwater Program's 110 Foot Island Class vessels . . . .[9]

On July 29, 2011, the United States filed a complaint against Bollinger based on allegations that "Bollinger knowingly misled the Coast Guard to enter into a contract for the lengthening of Coast Guard cutters by falsifying data relating to

---

[9]   *Id.* at 1.

the structural strength of the converted vessels."[10] The United States' complaint alleged two violations of the False Claims Act, as well as common law fraud, negligent misrepresentation, and unjust enrichment.[11]

On August 3, 2011, days after the underlying suit was filed, Bollinger put National Union and Chartis on notice of the suit.[12] Bollinger held a Directors, Officers, and Private Company Liability Insurance Policy with National Union ("the D&O Policy").[13] The policy covered defense costs and liability for claims first made against Bollinger during the "Policy Period" of March 1, 2011 to March 1, 2012.[14]

On August 4, Chartis acknowledged receipt of Bollinger's claim.[15] On August 30, Chartis informed Bollinger via letter that the underlying suit was not covered under the D&O Policy because, among other things, the United States' "claim" was first made in December 2008, when the tolling agreement was executed -- over two years before the Policy Period began.[16] After multiple

---

[10]   R. Doc. 76-5 at 2.

[11]   *Id.* at 12-14.

[12]   R. Doc. 76-5 at 1.

[13]   *See* R. Doc. 76-13.

[14]   *Id.* at 1.

[15]   R. Doc. 76-6.

[16]   R. Doc. 76-7 at 2-3.

unsuccessful attempts to convince Chartis and National Union that the D&O Policy covered the United States' lawsuit,[17] Bollinger sued Chartis and National Union in state court.[18] In the state court petition, Bollinger identified the D&O Policy by number and description, and alleged that defendants' failure to pay the defense costs Bollinger incurred in the underlying suit under that policy was "arbitrary, capricious, and without probable cause."[19] Defendants removed the case to federal court on August 24, 2012, and the Court eventually consolidated it with this matter.[20]

On September 24, 2013, Bollinger moved the Court for partial summary judgment against National Union and Chartis.[21] Bollinger requested that the Court find, as a matter of law, that the D&O Policy entitled Bollinger to the defense costs it incurred in the underlying suit. The Court denied Bollinger's motion, holding that the "claim" upon which the underlying suit arose was based was first made in 2008, when Bollinger and the United States

---

[17] *See* R. Docs. 76-8, 76-9, 76-10, 76-11.

[18] *See Bollinger Shipyards, Inc. et al. v. National Union Fire Insurance Company of Pittsburg, Pa. et al.*, No. 12-cv-2167, R. Doc. 1.

[19] *Bollinger Shipyards, Inc. et al. v. National Union Fire Insurance Company of Pittsburg, Pa. et al.*, No. 12-cv-2167, R. Doc. 1-2 at 4.

[20] R. Doc. 19.

[21] R. Doc. 76.

executed a tolling agreement, and hence that the claim fell outside of the applicable policy period.[22] The Court put the parties on notice that it would grant summary judgment in favor of National Union and Chartis if Bollinger failed to show cause why such a ruling was inappropriate.[23]

Bollinger timely filed an opposition to the Court's proposed grant of summary judgment in favor of National Union and Chartis.[24] Bollinger also filed a motion to alter or amend, seeking relief from the Court's order denying Bollinger's motion for summary judgment.[25]

## II.   STANDARD

### A.   Motion to Alter or Amend

Bollinger styled its motion as a "Motion For New Trial, To Alter Or Amend The Judgment, And/Or For Relief From Judgment," and seeks relief under Federal Rule of Civil Procedure 59.[26] But the Court's earlier order denying Bollinger's motion for summary judgment was not a "judgment" within the meaning of the Federal Rules. *Carter v. Coody*, 297 F. App'x 317, 319 (5th Cir. 2008)

---

[22]   R. Doc. 102.

[23]   *Id.* at 13-14.

[24]   R. Doc. 113.

[25]   R. Doc. 111.

[26]   *Id.*; R. Doc. 123.

("An order denying a motion to dismiss or for summary judgment is not a final order or judgment."); *see also* Fed. R. Civ. P. 54(a) (defining "judgment" as "includ[ing] a decree and any order from which an appeal lies"); *Black's Law Dictionary* 918 (9th ed. 2009) (defining "judgment" as "[a] court's final determination of the rights and obligations of the parties in a case"). Accordingly, Rule 59 is not applicable here. The Court will consider Bollinger's motion pursuant to Rule 60, under which the court may relieve a party from an "order." *See Broadway v. Norris*, 193 F.3d 987, 989 (8th Cir. 1999) (motion styled as a motion to alter or amend under Rule 59 must be considered under Rule 60 if it is "directed [not] to a final judgment, but rather to a nonfinal order").

Under Rule 60, the Court may relieve a party from a "final judgment, order, or proceeding" for one of the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). In deciding a Rule 60(b) motion, the Court must "balance the principle of finality of a judgment with the

7

interest of the court in seeing that justice is done in light of all the facts." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005). The Fifth Circuit has cautioned that relief under Rule 60(b) is an "extraordinary remedy," because the "desire for a judicial process that is predictable mandates caution in reopening judgments." *In re Pettle*, 410 F.3d 189, 191 (5th Cir. 2005) (quoting *Carter v. Fenner*, 136 F.3d 1000, 1007 (5th Cir. 1998)).

### B.  Summary Judgment

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo*

*v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.; Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry

of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

### III. DISCUSSION

#### A. Motion to Alter or Amend

Bollinger argues that the Court's earlier order denying summary judgment to Bollinger "contained two clear errors."[27] Bollinger contends, first, that the Court failed to take into account the "Continuity Dates" of the D&O Policy,[28] and second, that the Court "did not examine the meaning of the Discovery Period provisions in the D&O Policy."[29] Neither argument has merit.

The Court held that Bollinger was not entitled to defense costs in the underlying suit because the claim upon which the suit was based was first made against Bollinger in December 2008, before the applicable policy period began.[30] Bollinger contends that, because the claim was made "between the Continuity Dates

---

[27] R. Doc. 111-2 at 3.

[28] *Id.*

[29] *Id.* at 6.

[30] R. Doc. 102 at 13.

and the end of the D&O Policy," the underlying suit is covered.[31] Bollinger is incorrect. The D&O Policy, by its plain terms, is "limited to liability for only those claims that are first made against the insureds *during the policy period*."[32] The Policy Period is defined as March 1, 2011, to March 1, 2012.[33] The Continuity Dates do not change the policy period. Instead, they delimit the scope of the following exclusion from coverage:

> The insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured:
> . . .
> (e) alleging, arising out of, based upon or attributable to as of the Continuity Date, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which an insured had notice, or alleging any Wrongful Act which is the same or Related Wrongful Act to [*sic*] that alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation.[34]

In other words, the purpose of the Continuity Dates is to exclude from coverage claims arising out of, based on, or attributable to litigation or administrative proceedings that were pending before those dates. *See generally* Janet R. Davis & Gary L. Gassman, *The Ins and Outs of Employment Practices Liability Insurance Coverage and Claims*, Brief, Winter 2013, at 22, 31 ("In order to cap the

---

[31] R. Doc. 111-2 at 5.

[32] R. Doc. 76-13 at 1 (emphasis added); *see also id.* at 6.

[33] *Id.* at 1.

[34] *See id.* at 11-12.

insurer's potential liability . . . [claims made liability insurance] policies frequently include 'retroactive dates' or 'continuity dates' that preclude coverage for claims occurring prior to a specified date . . . . Thus, not every claim first made during the policy period will be covered." (citation omitted)). Accordingly, the Court reaffirms its holding that Bollinger is not entitled to defense costs under the D&O Policy because the United States' claim in the underlying lawsuit was first made outside of the policy period.

The Discovery Clause of the D&O Policy provides in relevant part as follows:

> [I]f [Bollinger] shall cancel or [Bollinger] or the Insurer shall refuse to renew this policy, [Bollinger] shall have the right to a period of either one, two or three years following the effective date of such cancellation or nonrenewal upon payment of the respective "Additional Premium Amount" described below (herein referred to as the "Discovery Period") in which to give to the Insurer written notice of Claims first made against [Bollinger] during said Discovery Period for any Wrongful Act occurring prior to the end of the Policy Period and otherwise covered by this policy.[35]

The Discovery Period is irrelevant to this lawsuit for two reasons. First, as Bollinger admits in its motion to alter or amend, Bollinger has renewed its policy year after year, and so the discovery period has never been triggered.[36] Second, even if it were triggered, the Discovery Period operates to extend

---

[35]   R. Doc. 76-13 at 36.

[36]   R. Doc. 111-2 at 7.

coverage *after* the applicable policy period. But the claim giving rise to the underlying suit was first made *before* the policy period, so the Discovery Period could not affect whether that claim is covered.

In sum, Bollinger is incorrect that the Court failed to properly take account of the Continuity Dates and Discovery Period of the D&O Policy in denying Bollinger's motion for summary judgment. The Court thus DENIES Bollinger's motion to alter or amend.

**B.     Summary Judgment for Chartis and National Union**

Bollinger argues that, even if the claim giving rise to the underlying suit was "first made" in December 2008, summary judgment in favor of Chartis and National Union is not appropriate because a "prior policy issued by the same underwriter" "may" provide coverage and defense for the underlying suit.[37] In support of this contention, Bollinger has submitted the first page of a "Directors, Officers, and Private Company Liability Insurance Policy" (Policy Number 457-01-39) issued by Illinois National Insurance Company to Bollinger with a Policy Period of May 1, 2008, to May 1, 2009.[38]

---

[37]     R. Doc. 113 at 2-3.

[38]     R. Doc. 113-2 at 2.

13

Bollinger cannot avoid summary judgment by pointing to Policy Number 457-01-39, because Bollinger did not include a claim based on that policy in its complaint -- indeed, this is apparently the first time in this litigation that Bollinger has even mentioned that policy. A plaintiff may not raise a new claim in a brief at the summary judgment stage. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); *see also U.S. ex rel. DeKort v. Integrated Coast Guard Sys.*, 475 F. App'x 521, 522 (5th Cir. 2012) (citing *Gilmour* for this proposition); *Asociacion de Suscripcion Conjunta del Seguro de Responsibilidad Obligatorio v. Juarbe-Jimenez*, 659 F.3d 42, 53 (1st Cir. 2011) (same); *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (same); *cf.* 17 Steven Plitt, et al., *Couch on Insurance* § 245:22 (3d ed. 2013) ("[A] plaintiff's initial pleading must in some manner bring the terms of the policy onto the record, at least where the policy establishes the plaintiff's right.").[39] Bollinger brought suit

---

[39] Bollinger is correct, of course, that Rule 8(d) allows a party to plead inconsistent claims in the alternative. *See* R. Doc. 123 at 2. But Rule 8(d) does not help Bollinger here, because it never pled a claim based on Policy Number 457-01-39 at all.

against National Union and Chartis based on "Policy Number 01-571-41-04, a Directors, Officers and Private Company Liability Insurance Policy issued by National Union, covering the policy period March 1, 2011 through March 1, 2012,"[40] and accordingly it may base its arguments for coverage on only that policy. Because the Court finds that Bollinger is not entitled to defense costs under Policy Number 01-571-41-04, summary judgment in favor of National Union and Chartis is warranted.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Bollinger's motion to alter or amend its earlier order and grants summary judgment in favor of National Union and Chartis. National Union and Chartis are hereby dismissed from this case.

New Orleans, Louisiana, this 13th day of March, 2014.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[40] *Bollinger Shipyards, Inc. et al. v. National Union Fire Insurance Company of Pittsburg, Pa. et al.*, No. 12-cv-2167, R. Doc. 1-2 at 4.