UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

XL SPECIALTY INSURANCE COMPANY                CIVIL ACTION

VERSUS                                        NO: 12-2071

BOLLINGER SHIPYARDS, INC., ET AL.             SECTION: R(2)

### ORDER AND REASONS

Bollinger[1] moves to remand to state court its insurance coverage suit against Illinois National Insurance Company (Illinois National), American International Specialty Lines Insurance Company (AISLIC), AIG Claims, Inc. (AIG), and Willis of Louisiana, Inc. (Willis).[2] For the following reasons, Bollinger's motion is DENIED, and Bollinger's claims against Willis are dismissed.

**I.   BACKGROUND**

This insurance coverage dispute arises out a False Claims Act action brought against Bollinger by the United States in connection with a ship conversion project for the United States Coast Guard. The factual and procedural history of the underlying FCA suit has been described elsewhere[3] and will not be repeated here.

---

[1]     "Bollinger" refers collectively to Bollinger Shipyards, Inc., Bollinger Shipyards Lockport, L.L.C., and Halter Bollinger Joint Venture, L.L.C.

[2]     R. Doc. 215.

[3]     *See, e.g.*, R. Doc. 102.

In an effort to obtain coverage for its costs defending the FCA suit, Bollinger filed claims with and eventually sued a number of its insurers in addition to the insurers involved in this motion. The Court consolidated the suits against the other insurers with a declaratory judgment action brought against Bollinger by yet another insurance carrier.[4]

On April 29, 2014, Bollinger brought this suit against Illinois National, AISLIC, AIG, and Willis in state court.[5] On June 12, 2014, Illinois National, AISLIC, and AIG removed to federal court on the basis of diversity jurisdiction under 28 U.S.C. § 1332, contending that Bollinger had improperly joined Willis, the only non-diverse party.[6] The suit was then consolidated with the other insurance actions pending before this Court.[7]

In its complaint, Bollinger alleges that (1) "at all relevant times" it was a "named insured[]" under Directors, Officers, and Private Company Liability Insurance Policies issued by AISLIC and Illinois National;" (2) that these policies "included coverage for defense costs;" (3) that all of its claims were administered by AIG; (4) that AIG, AISLIC, and Illinois National are under common

---

[4]   *See* R. Docs. 1, 6, 19.

[5]   *See Bollinger Shipyards, Inc., et al. v. Illinois National Insurance Co., et al.*, No. 14-cv-1377, R. Doc. 1-2.

[6]   *See Bollinger Shipyards, Inc., et al. v. Illinois National Insurance Co., et al.*, No. 14-cv-1377, R. Doc. 1.

[7]   R. Doc. 211.

2

ownership and/or control; and (5) that it had paid all of its premiums and that its D&O policies with AISLIC and Illinois National "were in full force" when the United States "made certain claims against Bollinger" in connection with the Coast Guard ship conversion project.[8] Bollinger also alleges that after the United States revoked acceptance of the vessels, Bollinger directed its insurance agent, Willis, to put its underwriters on notice of a possible claim and that "all appropriate notice was given to the underwriters."[9] Bollinger alleges that the insurer defendants -- AISLIC, Illinois National, and AIG -- "failed to undertake Bollinger's defense and have refused to pay defense costs . . . due under the policy."[10] In addition, Bollinger claims that defendants' refusal to pay violates both La. R.S. § 22:1892 and La. R.S. § 22:1973, and that Bollinger is entitled to recover statutory penalties under one or both of these statutes.[11]

Next, in the event that the "Court finds proper notice was not given," Bollinger makes allegations in the alternative against Willis for "fraud and breach of fiduciary duties."[12] Specifically, Bollinger alleges that Willis committed "fraud" because "[a]fter

---

[8]    R. Doc. 222-1 at 4.

[9]    *Id.* at 6.

[10]   *Id.* at 4.

[11]   *Id.* at 5-6.

[12]   *Id.* at 6.

receiving Bollinger's direction to put the underwriters on notice, Willis, through silence and inaction, misrepresented that this was done."[13] Likewise, Bollinger alleges that Willis "breached its fiduciary duties to Bollinger . . . insofar as proper notice was not given to Bollinger's underwriters."[14]

Bollinger now moves to remand this suit to state court, arguing that the presence of Willis as a defendant destroys diversity.[15] AISLIC, Illinois National, and AIG contend that removal remains proper because Willis, the only non-diverse defendant, was improperly joined in the suit.[16] They assert that the claims against Willis are preempted under La. R.S. § 9:5606 and that Bollinger's complaint fails to satisfy the fraud exception to the statute.

La. R.S. § 9:5606 governs claims against insurance agents.[17] Section 9:5606 provides:

> No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed . . . within one year . . . from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such

---

[13]     *Id.*

[14]     *Id.*

[15]     R. Doc. 215.

[16]     R. Doc. 213

[17]     *Id.* at 2.

actions shall be filed at the latest within three years
from the date of the alleged act, omission, or neglect.

In addition, section 9:5606 provides that "[t]he peremptive period
. . . shall not apply in cases of fraud."

AISLIC, Illinois National, and AIG submit evidence in the form of emails and deposition testimony showing that by February 21, 2008, Bollinger knew Willis had not informed Bollinger's underwriters of any claims against Bollinger. Specifically, their evidence shows that on May 24, 2007, Bollinger informed Michael Tubbs of Willis that the United States had revoked acceptance of the ships and told Tubbs, "it may be prudent to put the appropriate underwriters on notice of this event."[18] Seven and a half months later, on January 4, 2008, Bollinger followed up by email, again instructing Tubbs to "advise underwriters of possible claim."[19] A month later, on February 1, 2008, Bollinger replaced Willis with Arthur J. Gallagher as its insurance agent.[20]

A couple of weeks after switching insurance agents, on February 18, 2008, Bollinger sent a follow up email to Nigel Brunning at Willis, notifying Brunning that it had never received confirmation from Tubbs that its underwriters had been advised of

---

[18]    R. Doc. 213-1 at 32.

[19]    *Id.* at 38.

[20]    *Id.* at 21.

a claim, and asking Brunning to check whether it had been done.[21] Brunning responded that he would look into it.[22] Three days later, on February 21, 2008, without having received confirmation one way or another from Brunning, Bollinger informed Brunning that it had passed the information about the United States' claims on to its new agent, Gallagher, and told Brunning "you do not have to worry about it."[23] That same day, Brunning wrote back to say that Willis "didn't find any record" of having reported any possible claims to Bollinger's underwriters.[24] Thus, as of February 21, 2008, Bollinger had confirmation that Willis had no record of informing Bollinger's underwriters of anything. Therefore, AISLIC, Illinois National, and AIG contend that section 5606's one-year peremptive period has long since extinguished any claim Bollinger could bring against Willis arising out of Willis's alleged failure to advise Bollinger's underwriters.

## II. LEGAL STANDARD

Unless a federal statute expressly provides otherwise, a defendant may remove a civil action filed in state court if the federal court would have had original jurisdiction over the case. 28 U.S.C. § 1441(a). The removing party "bears the burden of

---

[21]    *Id.* at 38.

[22]    *Id.* at 37.

[23]    *Id.*

[24]    *Id.* at 40.

showing that federal jurisdiction exists and that removal was proper." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013) (citing *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)). In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that "removal statute[s] should be strictly construed in favor of remand." *Manguno*, 276 F.3d at 723 (citing *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)). The Court must remand the case to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."  28 U.S.C. § 1447(c).

When federal jurisdiction is based on diversity, a defendant may remove only if none of the "parties in interest *properly* joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b) (emphasis added). Improper joinder doctrine provides a narrow exception to the rule requiring complete diversity, and the burden of demonstrating improper joinder is a heavy one. *See Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007) (citing *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005)). A defendant may establish improper joinder by showing either (1) actual fraud in pleading jurisdictional facts, or (2) the plaintiff's inability to establish a cause of action against the non-diverse parties in state court.

*Id.* (citing *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 461 (5th Cir. 2003)). Here, there is no allegation that the plaintiffs fraudulently pleaded jurisdictional facts. Accordingly, only the second prong of the improper joinder test is at issue. Under this prong, the Court asks whether there is arguably a reasonable basis for predicting that state law might impose liability on the non-diverse defendants. *Id.* This possibility of recovery "must be reasonable, not merely theoretical." *Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)**).**

To decide whether a plaintiff has demonstrated a reasonable possibility of recovery, "the district court may 'conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant.'" *Menendez v. Wal-Mart Stores, Inc.,* 364 F. App'x 62, 69 (5th Cir. 2010) (per curiam) (quoting *Smallwood v. Ill. Cent. R.R. Co.,* 385 F.3d 568, 573 (5th Cir. 2004)). The scope of the inquiry for improper joinder, however, is broader than that for Rule 12(b)(6), because the Court may "pierce the pleadings" and consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for its claim. *Smallwood,* 385 F.3d at 573 (citing *Badon v. R J R Nabisco Inc.*, 224 F.3d 382, 389 (5th Cir. 2000)); *see also Menendez*, 364 F. App'x at 69. In conducting this inquiry, the Court

must "take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis,* 326 F.3d at 649. Further, the Court must resolve all contested issues of fact and all ambiguities of state law in favor of the plaintiff. *Id.; Elam v. Kan. City S. Ry. Co.,* 635 F.3d 796, 813 (5th Cir. 2011).

## III. DISCUSSION

The question to be answered is whether there is arguably a reasonable basis for predicting that Louisiana law might impose liability on Willis. The Court concludes that there is not.

### La. R.S. § 9:5606

Bollinger's claims against Willis are governed by La. R.S. § 9:5606, which governs claims for damages against an insurance "agent, broker, solicitor, or other similar licensee." The parties do not appear to dispute that Willis is an insurance agent within the meaning of the statute, and that the statute therefore applies to actions against it. Section 9:5606(A) provides that all actions for damages against an insurance agent must be brought within one year of the date on which the alleged wrongful act, omission, or neglect was or should have been discovered, and that no claim against an insurance agent may be filed more than three years from the date when the alleged act, omission, or neglect occurred. In addition, § 5606(C) provides that "[t]he peremptive period . . . shall not apply in cases of fraud." The facts here establish that

9

unless the fraud exception applies, Bollinger's claims against Willis are extinguished by both the one-year and three-year peremptive periods of section 9:5606.

First, the three-year peremptive period bars claims made more than three years after the occurrence of the alleged wrongful act, omission, or neglect. Willis ceased to be Bollinger's insurance agent on February 1, 2008, when Bollinger replaced Willis with Arthur J. Gallagher Risk Management as its sole insurance agent and broker.[25] Therefore the latest that Willis could have committed a wrong as Bollinger's insurance agent was February 1, 2008. Bollinger did not initiate this suit until April 26, 2014, over six years later. Thus, this suit falls well outside the three-year peremptive period of section 9:5606.

Second, the one-year peremptive period bars claims made more than one year after the date on which the alleged wrongful act, omission, or neglect was or should have been discovered. Here, Bollinger requested that Willis notify its insurers in 2007 and again in early 2008. On February 18, 2008, Bollinger followed up with Willis, asking Willis to check if it had ever given Bollinger's underwriters the requested notice.[26] Three days later, on February 21, 2008, Willis wrote back to say that it "didn't find any record" of having reported any claims to Bollinger's

---

[25]    R. Doc. 213-1 at 21.

[26]    *Id.* at 38.

underwriters.[27] Thus, as of February 21, 2008, Bollinger had confirmation that Willis had no record of informing Bollinger's underwriters of anything. Again, Bollinger did not initiate this suit until April 26, 2014, over six years later. Therefore, this suit also falls outside the one-year peremptive period of section 9:5606. Accordingly, unless the fraud exception applies, Bollinger's claims against Willis are perempted.

**Fraud**

Preliminarily, the Court notes that Bollinger has failed to plead fraud with the level of particularity demanded by Federal Rule of Civil Procedure 9(b). Pleading fraud with particularity in the Fifth Circuit requires a plaintiff to plead the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (quoting *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994). Plaintiffs must "set forth an explanation as to why the statement or omission complained of was false or misleading." *Id.* at 179 (citation omitted). Finally, "although scienter may be 'averred generally,' . . . pleading scienter requires more than a simple allegation that a defendant had fraudulent intent. To plead scienter adequately, a

---

[27] *Id.* at 40.

11

plaintiff must set forth specific facts that support an inference of fraud." *Tuchman*, 14 F.3d at 1068 (quoting F.R.C.P. 9(b)).

Here, Bollinger conclusorily alleges that Willis "committ[ed] fraud against Bollinger" and "committ[ed] . . . professional fraud."[28] Beyond that, Bollinger alleges only that "[a]fter receiving Bollinger's direction to put the underwriters on notice, Willis, through silence and inaction, misrepresented that this was done, though it unjustly benefitted from being paid by Bollinger nonetheless, and Bollinger was caused a loss through this fraud."[29] Bollinger fails to allege the date or dates on which the underlying wrong (here, the failure to notify) took place, the place where the misrepresentation "through silence and inaction" occurred, or the names of the people involved. Nor does Bollinger explain why Willis's "silence and inaction" -- behavior that appears just as consistent with simple inattention or incompetence as it does with fraud -- "was false or misleading." *Williams*, 112 F.3d at 179. Finally, Bollinger does not allege, "generally" or otherwise, that Willis acted with the requisite scienter when it failed to inform Bollinger that the underwriters were not put on notice. F.R.C.P. 9(b). Indeed, Bollinger makes no allegations at all concerning Willis's knowledge or intentions. Therefore, Bollinger has utterly

---

[28]   *Bollinger Shipyards, Inc., et al. v. Illinois National Insurance Co., et al.*, No. 14-cv-1377, R. Doc. 1-2 at ¶ 15.

[29]   R. Doc. 222-1 at 6 ¶ 14.

12

failed to plead fraud with the requisite particularlity. For this reason alone, Bollinger's fraud allegations would be insufficient to bring Bollinger within the fraud exception of section 9:5606(C).

In addition, however, when making an improper joinder determination, a court may "pierce the pleadings" and consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for its claim. *Smallwood,* 385 F.3d at 573. The Court has done so here and finds that there is also no basis in fact for Bollinger's conclusory allegations of fraud. Therefore, the fraud exception to section 9:5606 does not apply.

The fraud exception provision of section 9:5606 refers to article 1953 of the Louisiana Civil Code. Article 1953 of the Civil Code defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other," and provides that fraud "may also result from silence or inaction." In support of their Opposition to Bollinger's Motion to Remand, AISLIC, Illinois National, and AIG submitted summary judgment style evidence in the form of emails and deposition testimony. These documents reveal that there is no basis to conclude that Willis's alleged "silence and inaction" constituted anything close to the type of fraudulent conduct described by article 1953 of the Louisiana Civil Code.

The relevant facts are as follows: In a May 24, 2007 email to Michael Tubbs at Willis, Bollinger informed Willis that the United States had revoked acceptance of the cutters.[30] In that email, Bollinger stated, "it may be prudent to put the appropriate underwriters on notice of this event."[31] There is no indication that Tubbs responded. Seven and a half months later, on January 4, 2008, Bollinger followed up by email, again instructing Tubbs to "advise underwriters of possible claim."[32] Again, there is no indication that Tubbs responded. One month later, on February 1, 2008, Bollinger replaced Willis with Arthur J. Gallagher as its insurance agent.[33] Two weeks after switching insurance agents, on February 18, 2008, Bollinger contacted a different Willis employee, Nigel Brunning, and notified him that it had never received confirmation that its underwriters had been advised of a claim.[34] Bollinger asked Brunning to check if it had been done.[35] Brunning responded that same day saying that he would look into it.[36] Three days later, on February 21, 2008, without having received confirmation one way or

---

[30]   R. Doc. 213-1 at 32.

[31]   *Id.*

[32]   *Id.* at 38.

[33]   *Id.* at 21.

[34]   *Id.* at 38.

[35]   *Id.*

[36]   *Id.* at 37.

14

another from Brunning, Bollinger informed him that it had passed the information about the United States' claims on to its new agent, Gallagher, and told Brunning "you do not have to worry about it."[37] That same day, Brunning wrote back anyway with a report of what he had gathered about the status of Bollinger's claims. He said that Willis "didn't find any record" of having reported any possible claims to Bollinger's underwriters.[38] Brunning's clear and direct response is fundamentally the opposite of fraud or concealment. Indeed, the only conduct in this sequence of events that could be characterized as "silence and inaction" is Tubbs's failure to respond to the Bollinger's May 24, 2007 and January 4, 2008 emails. But this conduct does not constitute fraud either. First, nothing indicates that Bollinger was misled by this omission. To the contrary, that Bollinger saw need to follow up at least twice to check if the requested notice had been made indicates that it did not rely upon Tubb's failure to respond to the emails as an indication that notice had been made. Second, there is simply nothing to suggest that Tubbs chose not to respond to Bollinger's emails "with the intention . . . to obtain an unjust advantage . . . or to cause a loss or inconvenience." La. Civ. Code art. 1953. Therefore, no fraud occurred that would satisfy the

---

[37]    *Id.*

[38]    *Id.* at 40.

fraud exception provision of section 9:5606(C). Accordingly, section 9:5606(A) perempts Bollinger's claims against Willis.

Because the peremptive statute bars Bollinger's claims against Willis, Bollinger does not have a viable cause of action against Willis. This means that Bollinger improperly joined Willis, the only non-diverse party in the suit. Complete diversity exists between Bollinger and the remaining defendants, AISLIC, Illinois National, and AIG. Therefore, the Court finds that removal was proper.

**IV. CONCLUSION**

For the forgoing reasons, Bollinger's motion to remand is DENIED and Bollinger's claims against Willis are dismissed.

In addition, in light of the Court's dismissal of Bollinger's claims against Willis, Willis's pending Motion to Dismiss[39] is now moot.

New Orleans, Louisiana, this 22nd day of October, 2014.

_Sarah Vance_

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[39]    R. Doc. 216.

16