```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA
```

XL SPECIALTY INSURANCE COMPANY            CIVIL ACTION

VERSUS                                    NO: 12-2071

BOLLINGER SHIPYARDS, INC., ET AL.         SECTION: R(2)


**ORDER AND REASONS**

This insurance coverage dispute concerns two claims-made liability policies issued to plaintiff Bollinger[1]--one each by defendants American International Specialty Lines Insurance Company and Illinois National Insurance Company. Defendant AIG Claims, Inc. administered both policies. The parties have filed cross motions for summary judgment.[2] For the following reasons, the Court denies Bollinger's motion and grants the motion filed by American International, Illinois National, and AIG.

---

[1]   "Bollinger" refers collectively to Bollinger Shipyards, Inc.; Bollinger Shipyards Lockport, L.L.C.,; and Halter Bollinger Joint Venture, L.L.C.

[2]   R. Doc. 250 (Illinois National, American International, and AIG); R. Doc. 254 (Bollinger). Illinois National, American International, and AIG also previously filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Because this order resolves all of Bollinger's claims against Illinois National, American International, and AIG, it moots their motion to dismiss.

## I. BACKGROUND

### A. Procedural Background

This insurance coverage dispute arises out of a lawsuit brought against Bollinger by the United States under the False Claims Act, 31 U.S.C. §§ 3729, *et seq.*, regarding a ship conversion project that Bollinger completed for the United States Coast Guard. The Court has described the factual and procedural history of the underlying suit elsewhere[3] and will not repeat it here.

In an effort to obtain coverage for the costs of defending the underlying suit, Bollinger filed claims with and eventually sued a number of its insurers in addition to the insurers involved in these motions. The Court consolidated the suits against the other insurers with a declaratory judgment action brought against Bollinger by yet another insurance carrier.[4]

After Bollinger sued the three defendants involved in these motions in state court, they removed to federal court on the basis of diversity jurisdiction under 28 U.S.C. § 1332.[5] The suit was then consolidated with the other insurance actions

---

[3]   *See, e.g.*, R. Doc. 271.

[4]   *See* R. Docs. 1, 6, 19.

[5]   *See Bollinger Shipyards, Inc., et al. v. Illinois National Insurance Co., et al.*, No. 14-cv-1377, R. Doc. 1.

pending before this Court.[6]  Bollinger filed a motion to remand the suit,[7] which the Court denied.[8]

### B.  Factual Background

Two insurance policies are potentially relevant to Bollinger's coverage claims in this suit.  First, American International insured Bollinger under a "Directors, Officers and Private Company Liability Insurance Policy" (commonly referred to as a "D&O policy"), with policy number 459-73-63 and a "Policy Period" of December 31, 2005 to December 31, 2006.[9]  Second, Illinois National Insurance Company insured Bollinger under a D&O policy with policy number 457-01-39 and a "Policy Period" of May 1, 2008 to May 1, 2009.[10]

The policies are substantively identical in all respects critical to the Court's analysis, so the Court summarizes their key terms together.  The first page of both policies provides the following notice in boldface font:

> **NOTICE: EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS**

---

[6]   R. Doc. 211.

[7]   R. Doc. 215.

[8]   R. Doc. 270.

[9]   R. Doc. 250-11 at 2.

[10]  R. Doc. 250-6 at 2.

**HEREIN. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.**[11]

Both policies go on to provide, in relevant part, that they will "pay the Loss of [Bollinger] arising from a . . . Claim first made [against Bollinger] . . . during the Policy Period or the Discovery Period[12] (if applicable) and reported to the Insurer pursuant to the terms of [the] policy."[13]  "Claim" is a defined term meaning, among other things, "a written demand for monetary or non-monetary relief (including any request to toll or waive any statute of limitations)."[14]

In the motions now before the Court, Bollinger asserts that the United States "first made" a covered "Claim" against it on two separate occasions.  First, Bollinger contends that a "preserve evidence letter" dated December 14, 2006 constitutes a "Claim" falling within the policy period of American

---

[11]    R. Doc. 250-11 at 2; R. Doc. 250-6 at 2.

[12]    "Discovery Period" refers to an additional period of time that an insured can purchase after the expiration of a policy to report claims "otherwise covered by [the] policy" but not "first made" until the Discovery Period.  *See* R. Doc. 250-12 at 34; R. Doc. 250-6 at 19.  The motions before the Court concern Claims allegedly "first made" *during* the policy periods of the two policies at issue here, not during any subsequent "Discovery Period.  In addition, Bollinger does not suggest that it purchased a Discovery Period for any of its policies.  Therefore, the Discovery Period is irrelevant to these motions.

[13]    R. Doc. 250-11 at 6; R. Doc. 250-6 at 7.

[14]    R. Doc. 250-11 at 7; R. Doc. 250-6 at 8.

International Policy Number 459-73-63. American International disputes that a preserve evidence letter qualifies as a "Claim" under the policy. Second, Bollinger contends that a Tolling Agreement that Bollinger entered into with the United States on December 23, 2008 also constitutes a "Claim." The Tolling Agreement falls within the policy period of Illinois National Policy Number 457-01-39.

American International, Illinois National, and AIG now move for summary judgment on all of Bollinger's claims against them on the ground that Bollinger did not report either the preserve evidence letter or the Tolling Agreement by the applicable deadlines, and that therefore neither alleged "Claim" is covered by their policies. Both policies define the period within which Claims must be reported to be covered. American International Policy Number 459-73-63 states, in relevant part, that "as a condition precedent to the obligations of the Insurer under this policy, . . . all Claims shall be reported . . . anytime during the Policy Period . . . or . . . within 30 days after the end of the Policy Period."[15] Thus, the policy categorically excludes any claim not reported by January 30, 2007 (the last date of the Policy Period--December 31, 2006--plus 30 days). Similarly, Illinois National Policy Number 457-01-39 states, in relevant part, that the Insureds "shall, as a condition precedent to the

---

[15]    R. Doc. 250-12 at 54.

obligations of the Insurer under this policy, give written notice" of a claim "in all events no later than . . . anytime during the Policy Period . . . or . . . within ninety (90) days after the end of the Policy Period."[16]  Thus, the policy categorically excludes any claim not reported by July 30, 2009 (the last date of the Policy Period--May 1, 2009--plus 90 days).

Bollinger points to evidence of a July 29, 2011 email that it contends constitutes "written notice to AIG Claims, on behalf of [American International] and Illinois National" of the "claim . . . made against [Bollinger] by the United States."[17]  Bollinger does not assert that any other notice was ever provided to any of its insurers.

The insurance companies have refused to provide coverage, a defense, or reimbursement of any defense costs to Bollinger.  Bollinger asks the Court to find as a matter of law that the D&O Policies entitle Bollinger to the defense costs it has incurred in the underlying suit.  Bollinger also seeks an award of statutory penalties, attorneys' fees, costs, and interest.

---

[16]   R. Doc. 250-6 at 49.

[17]   R. Doc. 254-3 at 2 (Bollinger's Statement of Uncontested Material Facts); R. Doc. 250-13 (email).

**II. STANDARD**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the

existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.; Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

### III. DISCUSSION

The parties agree that Louisiana law governs this case. In Louisiana, an insurance policy "should be construed by using the general rules of interpretation of contracts set forth in the

8

Civil Code." *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763 (La. 1994). "The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent." *Id.* (citing La. Civ. Code art. 2045). If the words of the contract are "clear and explicit and lead to no absurd consequences," the plain meaning of the contract prevails, and "no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046; *id.* art. 2047 (words of a contract should be given their "generally prevailing meaning," unless the words have acquired a technical meaning).

If there is ambiguity in an insurance policy, the ambiguity must be resolved in favor of the insured. *La. Ins. Guar. Ass'n*, 630 So.2d at 764; *see also* La. Civ. Code art. 2056 ("A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party."). This rule of strict construction should be applied only if the contract is actually ambiguous; it "does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating ambiguity where none exists." *Reynolds v. Select Props., Ltd.*, 634 So. 2d 1180, 1183 (La. 1994) (quoting *Union Ins. Co. v. Advance Coating Co.*, 351 So. 2d 1183, 1185 (La. 1977)); *see also La. Ins. Guar. Ass'n*, 630 So. 2d at 764 ("When the language of an insurance policy is clear, courts lack the authority to change or alter its terms under the guise of

interpretation."). Moreover, "insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy." *Reynolds*, 634 So.2d at 1183.

With these principles in mind, the Court turns to the policies at issue in these motions. Both American International and Illinois National insured Bollinger under claims-made D&O policies, which provided coverage for only those claims made within the policy period and reported either within the policy period or within a set number of days after the policy period ended. The parties appear to agree that the 2008 Tolling Agreement constitutes a claim, but they dispute whether the 2006 preserve evidence letter does. The Court need not decide if the letter is claim, however, because in any event, Bollinger did not provided timely notice of either alleged claim to its insurers.

As summarized above, any claim falling under American International Policy Number 459-73-63 had to be reported by January 30, 2007 to be covered, and any claim falling under Illinois National Policy Number 457-01-39 had to be reported by July 30, 2009 to be covered. Bollinger has the burden of proof on the issue of whether it timely reported the "Claims." *See Coleman v. Sch. Bd. of Richland Parish*, 418 F.3d 511, 517 (5th Cir. 2005) (citing *Doerr v. Mobil Oil Corp.*, 774 So. 2d 119, 124 (La. 2000)) (applying Louisiana law; "With respect to coverage,

the insured bears the burden of proving that the incident giving rise to a claim falls within the policy's terms."). But Bollinger provides no evidence that it gave any notice of any claim to any of its insurers prior to July 28, 2011. Thus, neither of the policies at issue here cover the underlying suit.

Public policy supports this result. As the Louisiana Supreme Court has explained, "the purpose of the reporting requirement [in a claims-made policy] is to define the scope of coverage [purchased by the insured] by providing a certain date after which an insurer knows it is no longer liable under the policy." *Gorman v. City of Opelousas*, 148 So. 3d 888, 893 (La. 2014) (quoting *Resolution Trust Corp. v. Ayo*, 31 F.3d 285, 289 (5th Cir. 1994)). "Once the policy period and reporting period expire, the insurer can 'close its books' on that policy." *Id.* For this reason, "such reporting requirements are strictly construed." *Resolution Trust*, 31 F.3d at 289 (applying Louisiana law). Because Bollinger did not comply with the reporting requirement under either policy, the policies do not cover Bollinger's costs in the underlying suit.

In opposition, Bollinger argues that its "Policy Period has been extended year after year" by its repeated renewals of its D&O coverage.[18] Bollinger is incorrect. The Louisiana Supreme Court recently rejected as similar "merged into one" argument in

---

[18]   R. Doc. 254-1 at 13.

11

*Gorman*, 148 So. 3d 888.  There, an insured had a claim filed against it during one policy period but did not report the claim to its insurer until the following policy period.  *See id.* at 893.  As the Louisiana Supreme Court explained, each policy is separate, and the second policy "did not extend the policy period" of the first policy.  *Id.* at 897; *see also Specialty Food Sys., Inc. v. Reliance Ins. Co. of Ill.*, 45 F. Supp. 2d 541 (E.D. La.) (applying Louisiana law and holding that an insured had not timely reported a claim that was first made against it during one policy's policy period but not reported until a second policy's policy period), *aff'd*, 200 F.3d 816 (5th Cir. 1999).  Because Bollinger's renewals of its D&O coverage did not alter the defined policy periods of its individual policies, this argument fails.

Similarly, Bollinger argues that the "Continuity Dates" of the policies somehow change the result.  Bollinger is wrong.  The Continuity Dates do not alter the relevant policy periods or the applicable reporting deadlines.  Instead, they define the scope of the following exclusion from coverage:

> The insurer shall not be liable to make any payment for Loss in connection with a Claim made against  an Insured:
> . . .
> (e) alleging, arising out of, based upon or attributable to as of the Continuity Date, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which an insured had notice, or alleging any Wrongful Act which is the same or Related Wrongful Act to [*sic*] that alleged in such

>                pending or prior litigation or administrative or
>                regulatory proceeding or investigation.[19]

Thus, the policies exclude from coverage claims arising out of, based on, or attributable to litigation or administrative proceedings that were pending before the Continuity Dates. But here, no one argues that the preserve evidence letter or the Tolling Agreement relate to litigation or other proceedings that predate the applicable Continuity Dates. Therefore, the Continuity Dates are irrelevant these motions. So this argument fails.

Finally, Bollinger contends that a provision in the policies indicating that the insurers "shall advance . . . at the written request of the Insured, Defense Costs prior to the final disposition of a Claim"[20] requires a different result. But "Defense Costs" is a defined claim, which is limited to "reasonable and necessary fees, costs and expenses *consented to by the Insurer*."[21] Both policies specifically provide, in bold font, in the paragraph immediately following the section Bollinger cites, that "**in all events the Insurer may withhold consent to any . . . Defense Costs, or any portion thereof, to the extent such Loss is not covered under the terms of this**

---

[19] R. Doc. 250-11 at 11-12; R. Doc. 250-6 at 12-13.

[20] R. Doc. 250-11 at 17; R. Doc. 250-6 at 18 (emphasis added).

[21] R. Doc. 250-11 at 7; R. Doc. 250-6 at 8.

**policy.**"[22]  The Court has just held that the defense costs sought by Bollinger for the underlying suit are not covered by American International's or Illinois National's policy, because Bollinger did not report the alleged claims during the applicable policy periods.  Thus, neither company was obligated to consent to Bollinger's defense costs.  District courts in other jurisdictions have reached a similar conclusion when interpreting nearly identical policy language.  *See, e.g.*, *Brown v. Am. Int'l Grp., Inc.*, 339 F. Supp. 2d 336 (D. Mass. 2004) (Kentucky law); *Hurley v. Columbia Cas. Co.*, 976 F. Supp. 268 (D. Del. 1997) (Michigan law).  Because the companies did not have a duty to advance costs not covered by their policies, this argument also fails.

In sum, since Bollinger did not comply with its policies' reporting requirements, the policies at issue here do not cover the underlying suit.  In addition, because the Court has determined that American International, Illinois National, and AIG are correct in their assessment that the policies do not cover the underlying suit, Bollinger's claim that it is entitled to penalties, fees, costs, and interest necessarily fails.

**IV. CONCLUSION**

---

[22]     R. Doc. 250-11 at 17; R. Doc. 250-6 at 18.

For the foregoing reasons, the Court DENIES Bollinger's motion for summary judgment and GRANTS the motion for summary judgment filed by Illinois National, American International, and AIG. The Court dismisses Illinois National, American International, and AIG from the case.

New Orleans, Louisiana, this 26th day of February, 2015.

*Sarah Vance*
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE